## FIKES *v.* ALABAMA.

No. 53.   Argued December 6, 1956.—Decided January 14, 1957.

*Jack Greenberg* argued the cause for petitioner.   With him on the brief were *Peter A. Hall* and *Orzell Billingsley.*

*Robert Straub,* Special Assistant Attorney General of Alabama, argued the cause for respondent.   With him on the brief was *John Patterson,* Attorney General.

Mr. Chief Justice Warren delivered the opinion of the Court.

Petitioner is under sentence of death for the crime of burglary with intent to commit rape.   He seeks reversal of the judgment through a writ of certiorari to the Supreme Court of Alabama, which sustained the convic-tion.   263 Ala. 89, 81 So. 2d 303.   Petitioner raised three issues in support of his position that he had been denied due process of law.   He alleged:

1. Admission into evidence of two confessions extracted from him under circumstances demonstrating that the statements were coerced or involuntary.

2. Denial by the trial judge of petitioner's request to testify about the manner in which the confessions were obtained without subjecting himself to unlimited cross-examination as to the facts of the crime charged.

3. Selection of the grand jury which indicted him by a method that systematically discriminated against members of his race.

We granted certiorari to determine whether the requirements of due process under the Fourteenth Amendment had been satisfied in these aspects of petitioner's conviction. 350 U. S. 993. The judgment must be reversed because of the admission of the confessions. Therefore, it is unnecessary at this time to decide or discuss the other two issues raised by petitioner.

The facts essential to the present decision are as follows:

During the early months of 1953, a number of housebreakings, some involving rape or attempted rape, were committed in the City of Selma, Alabama. The present trial concerned one of these crimes.[1] On the night of April 24, 1953, an intruder broke into the apartment of the daughter of the city's mayor. She awoke to find a Negro man sitting on her with a knife at her throat. A struggle ensued which carried the woman and her assailant through the bedroom, hall, and living room, where she finally was able to seize the knife, at which point he fled. These rooms were all lighted. The victim testi-

---

[1] Petitioner apparently was indicted for six of the burglary incidents. See 263 Ala., at 96, 81 So. 2d, at 310. At the oral argument, counsel stated that shortly before the present trial petitioner had been convicted of another of these burglaries, one which had resulted in a rape, and sentenced to imprisonment for 99 years. It appears that no appeal was taken.

fied that the attacker "had a towel draped over his head" throughout the incident; she did not identify petitioner as the attacker in her testimony at the trial. However, two other women testified to similar housebreakings (one of which resulted in rape), and they each identified petitioner as the burglar. This testimony was admitted at the present trial "solely on the question of intent and identity of defendant and his motive on the occasion then on trial." 263 Ala., at 99, 81 So. 2d, at 313. This, with the challenged confessions, was substantially all the evidence concerning the crime at the trial.

About midnight on May 16, 1953, petitioner was apprehended in an alley in a white neighborhood in Selma by private persons, who called the police. The officers jailed him "on an open charge of investigation." The next day, a Sunday, the questioning that led to the challenged confessions began. It is, of course, highly material to the question before this Court to ascertain petitioner's character and background. He is a Negro, 27 years old in 1953, who started school at age eight and left at 16 while still in the third grade. There was testimony by three psychiatrists at the trial, in connection with a pleaded defense of insanity, to the effect that petitioner is a schizophrenic and highly suggestible. His mother testified that he had always been "thick-headed." Petitioner worked in a gas station in his home town of Marion, some 30 miles from Selma. So far as appears, his only prior involvement with the law was a conviction for burglary of a store in November 1949; he was released on parole in January 1951.

The questioning of petitioner was conducted principally by Captain Baker of the Selma police. His testimony that he repeatedly advised petitioner "that he was entitled to counsel and his various rights" must be viewed in the light of the facts concerning petitioner's mentality and experience just outlined.

The interrogation began on Sunday, May 17, with a two-hour session in the morning in Captain Baker's office. That afternoon, petitioner was questioned for two and a half or three hours, during part of which time he was driven around the city to some of the locations of the unsolved burglaries. During this ride, petitioner also talked to the sheriff of his home county, who had been called to Selma at petitioner's request, according to Captain Baker's testimony.

On Monday, petitioner talked with his employer. Captain Baker continued questioning for two hours in the morning. He testified that a warrant was served on petitioner in jail, but that petitioner did not request a preliminary hearing. In fact, he was not taken before any judicial officer prior to the confessions.[2] That afternoon, petitioner was driven to Kilby State Prison, which is located in another county, about 55 miles from Selma and some 80 miles from petitioner's home in Marion. The testimony of the responsible officers was that this

---

[2] Alabama law specifically required bringing petitioner promptly before a magistrate:

"It is the duty of any private person, having arrested another for the commission of any public offense, to take him without unnecessary delay before a magistrate, or to deliver him to some one of the officers specified in section 152 of this title [police officers], who must forthwith take him before a magistrate." Code of Ala., 1940, Tit. 15, § 160.

Under the cases of that State, violation of this requirement does not render inadmissible a confession secured during such detention. See *Ingram* v. *State*, 252 Ala. 497, 42 So. 2d 36. Nevertheless, such an occurrence is "relevant circumstantial evidence in the inquiry as to physical or psychological coercion." *Stein* v. *New York*, 346 U. S. 156, 187.

Petitioner was admitted to Kilby Prison on an order or letter from a State Circuit Judge. The nature of this procedure does not clearly appear from the record, but it is conceded that petitioner was not taken before the judge.

removal was done for petitioner's protection, although no specific threat against him had been made.

At Kilby Prison, petitioner was kept in the "segregation unit," out of contact with other prisoners. He saw only the jailers and Selma officers who drove over to question him. Petitioner was interrogated in an office in the prison. On Monday, there was questioning there for "several hours" in the afternoon and "a little while" after supper. The next interrogation was on Wednesday. It lasted "several hours" in the afternoon and into the evening. The following day petitioner was questioned for two hours in the afternoon and about an hour and a half in the evening. That day his father came to the prison to see him, but was refused admittance.

On Thursday evening, the first confession occurred. It was introduced at the trial through a tape recording. The confession consists of an interrogation by Captain Baker. Petitioner responded chiefly in yes-or-no answers to his questions, some of which were quite leading or suggestive.

Petitioner was questioned again for three hours on Saturday, May 23. That day, a lawyer who came to the prison to see him was turned away. On Sunday, petitioner's father was allowed to visit his son. This was the only contact petitioner had during the entire period in question with family or friend, or for that matter with anyone he knew, except the talks at the beginning of the week with the sheriff of his own county, in the presence of Selma officers, and with his employer.

In the second week of his incarceration, on Tuesday afternoon, petitioner was questioned for about two and a half hours. At this time, the second confession was made. Like the other, it consists of responses to questions. The second confession was taken down by a prison stenographer and signed by petitioner after it was read to him.

This outline of the facts surrounding the taking of the confessions comes entirely from the testimony of the State witnesses, who under the circumstances were the only ones who could testify at the trial on this subject other than the prisoner himself. He did not testify, because of the trial judge's ruling that he would be subject to unlimited cross-examination concerning the offense charged against him.[3] Standing alone, the State's evidence establishes that the confessions in the present case were not voluntary within the meaning of the decisions of this Court.

Here the prisoner was an uneducated Negro, certainly of low mentality, if not mentally ill. He was first arrested by civilians, lodged in jail, and then removed to

---

[3] The issue was raised at the trial in this colloquy:

"Solicitor Hare: The State offers in evidence the recording heretofore testified to by the witness presently on the stand [Captain Baker].

"Attorney Hall: If the Court please, the defendant objects to what purports to be a recording made by this witness, on the ground that sufficient predicate has not been laid.

"The Court: Over-rule the objection.

"Attorney Hall: We except, sir, and we would like to make another motion. We would like to make an offer to put this defendant on the stand for the purpose of refuting certain allegations by the State with reference to the voluntary nature of what purports to be certain extra judicial admissions, and for no other purpose.

"Solicitor Hare: Now, may it please the Court, if the defendant takes the stand, I insist that he be subject to cross-examination on any and every item that is in evidence. I am not willing to make any agreement of limitation.

"The Court: And you are only offering the testimony of the defendant for the purpose of refuting the voluntary nature of this recording?

"Attorney Hall: Just that, sir.

"The Court: I sustain the State. If the State is not willing to reach a stipulation or agreement on that, but insists that you open defendant for cross-examination of any and every nature, I over-rule the motion." [R. 230–231.]

a state prison far from his home. We do not criticize the decision to remove the prisoner before any possibility of violence might mature, but petitioner's location and the conditions of his incarceration are facts to be weighed in connection with the issue before us. For a period of a week, he was kept in isolation, except for sessions of questioning. He saw no friend or relative. Both his father and a lawyer were barred in attempts to see him. The protections to be afforded to a prisoner upon preliminary hearing were denied him, contrary to the law of Alabama.[4] He was questioned for several hours at a time over the course of five days preceding the first confession, and again interrogated at length before the written confession was secured.

There is no evidence of physical brutality, and particular elements that were present in other cases in which this Court ruled that a confession was coerced do not appear here. On the other hand, some of the elements in this case were not present in all of the prior cases. The objective facts in the present case are very much like those that were before the Court in *Turner* v. *Pennsylvania*, 338 U. S. 62, while the present petitioner was a weaker and more susceptible subject than the record in that case reveals Turner to have been. And cf. *Johnson* v. *Pennsylvania*, 340 U. S. 881. The totality of the circumstances that preceded the confessions in this case goes beyond the allowable limits. The use of the confessions secured in this setting was a denial of due process.

Neither *Stein* v. *New York*, 346 U. S. 156, nor any of the other cases relied on by respondent stands in the way of this conclusion. In *Stein*, the Court said:

> "The limits in any case depend upon a weighing of the circumstances of pressure against the power of resistance of the person confessing. What would

---

[4] See note 2, *supra*.

be overpowering to the weak of will or mind might be utterly ineffective against an experienced criminal." 346 U. S., at 185.

That is the same standard that has been utilized in each case, according to its total facts. Cf., *e. g.*, *Watts* v. *Indiana*, 338 U. S. 49, 53; *Lyons* v. *Oklahoma*, 322 U. S. 596, 602–605. We hold that the circumstances of pressure applied against the power of resistance of this petitioner, who cannot be deemed other than weak of will or mind, deprived him of due process of law. So viewed, the judgment of conviction in this case cannot stand.

The judgment is reversed, and the cause is remanded for proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE BRENNAN joins, concurring.

In joining the Court's opinion I should like to add a few words. A case like this is not easy for one who believes very strongly that adequate power should accompany the responsibility of the States for the enforcement of their criminal law. But the Due Process Clause of the Fourteenth Amendment has placed limitations upon the discretion, unbridled for all practical purposes, that belonged to the States prior to its adoption, and, more particularly, confines their freedom of action in devising criminal procedure. It is, I assume, common ground that if this record had disclosed an admission by the police of one truncheon blow on the head of petitioner a confession following such a blow would be inadmissible because of the Due Process Clause. For myself, I cannot see the difference, with respect to the "voluntariness" of a confession, between the subversion of freedom of the will through physical punishment and the sapping of the will appropriately to be inferred from the circumstances

of this case—detention of the accused virtually incommunicado for a long period; failure to arraign him in that period; [1] horse-shedding of the accused at the intermittent pleasure of the police until confession was forthcoming. No single one of these circumstances alone would in my opinion justify a reversal. I cannot escape the conclusion, however, that in combination they bring the result below the Plimsoll line of "due process."

A state court's judgment of conviction must not be set aside by this Court where the practices of the prosecution, including the police as one of its agencies, do not offend what may fairly be deemed the civilized standards of the Anglo-American world.[2] This record reveals a course of conduct that, however conscientiously pursued, clearly falls below those standards. Such conduct is not only not consonant with our professions about criminal justice, as against authoritarian methods that we denounce. It derives from an attitude that is inimical, if experience is any guide, to the most enduring interests of law.

MR. JUSTICE HARLAN, whom MR. JUSTICE REED and MR. JUSTICE BURTON join, dissenting.

The setting aside of this conviction, in my opinion, oversteps the boundary between this Court's function under the Fourteenth Amendment and that of the state

[1] Flouting of the requirement of prompt arraignment prevailing in most States is in and of itself not a denial of due process. Cf. McNabb v. United States, 318 U. S. 332. But it is to disregard experience not to recognize that the ordinary motive for such extended failure to arraign is not unrelated to the purpose of extracting confessions.

[2] "Ours is the accusatorial as opposed to the inquisitorial system." Watts v. Indiana, 338 U. S. 49, 54. An analysis of the particular phase of the judicial process involved in applying the Due Process Clause to state convictions secured on the basis of confessions has been attempted in my opinions in Malinski v. New York, 324 U. S. 401, 412; Haley v. Ohio, 332 U. S. 596, 601; Watts v. Indiana, supra.

courts in the administration of state criminal justice. I recognize that particularly in "coerced confession" cases the boundary line is frequently difficult to draw. But this Court has recognized that its corrective power over state courts in criminal cases is narrower than that which it exercises over the lower federal courts. *Watts v. Indiana,* 338 U. S. 49, 50.

In this instance I do not think it can be said that the procedures followed in obtaining petitioner's confessions violated constitutional due process. The elements usually associated with cases in which this Court has been constrained to act are, in my opinion, not present here in constitutional proportions, separately or in combination. Concededly, there was no brutality or physical coercion. And psychological coercion is by no means manifest. While the total period of interrogation was substantial, the questioning was intermittent; it never exceeded two or three hours at a time, and all of it took place during normal hours; "relay" tactics, such as were condemned in *Turner* v. *Pennsylvania,* 338 U. S. 62, and other cases,[1] were not employed. True, petitioner's mental equilibrium appears to have been less than normal, but these facts were before the trial judge and the jury. The absence of arraignment, much as that practice is to be deprecated, loses in significance in light of the State's representation at the oral argument that this was not an unusual thing in Alabama. As this Court recognizes, it did not of itself make the confessions inadmissible. Petitioner's removal to Kilby Prison, after authorization by a state circuit judge, stands on quite a different footing from the episode in *Ward* v. *Texas,* 316 U. S. 547. And I am not satisfied that there was any deliberate purpose to keep the petitioner incommunicado, such as existed in

---

[1] See, for example, *Watts* v. *Indiana, supra; Haley* v. *Ohio,* 332 U. S. 596; *Harris* v. *South Carolina,* 338 U. S. 68.

*Watts* v. *Indiana, supra; Turner* v. *Pennsylvania, supra;* and *Harris* v. *South Carolina, supra.* Before the first confession, petitioner, at his own request, was permitted to see the sheriff of his home county, and his employer. His father, although not permitted to see petitioner on the day of the first confession,[2] was allowed to see him before the second confession. The lawyer who sought to see petitioner was refused permission because, having no authority from petitioner or his family to represent him, the prison authorities evidently thought he was trying to solicit business.

The Supreme Court of Alabama, after reviewing the record, has sustained the conviction. 263 Ala. 89, 81 So. 2d 303. I find nothing here beyond a state of facts upon which reasonable men might differ in their conclusions as to whether the confessions had been coerced. In the absence of anything in the conduct of the state authorities which "shocks the conscience" or does "more than offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically," *Rochin* v. *California,* 342 U. S. 165, 172, I think that due regard for the division between state and federal functions in the administration of criminal justice requires that we let Alabama's judgment stand.

---

[2] The record is silent as to why the father did not gain admittance on this first visit.