THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAÚL FIGUEROA GARCÍA, Defendant and Appellant.

No. CR-64-130.    Decided February 8, 1965.

708

*Santos P. Amadeo* and *Guillermo Bird* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *J. F. Rodríguez Rivera, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

On the night of the 16th to the 17th of June, 1960 an engine hauling cane cars along the railway leading from Ceiba to Fajardo, ran over a man smashing his skull. Said person was Francisco Rosario Matta. Prior to being run over by the engine his body was motionless, lying on the ground, his head resting on one of the rails and the rest of the body outside the track perpendicular thereto. Notwithstanding the fact that splinters of the cranial bones and part of the encephalic substance were picked from the scene, it was noticed that very little blood had been shed.[1]

It transpires from the record that engine driver, Martín Rosario Corsino, was going to be prosecuted for involuntary

---

[1] The doctor who made the autopsy of the corpse of Francisco Rosario Matta reached the conclusion that his death was the result of a craniocerebral traumatism caused by the comminuted fractures of the "cranial cavity and base upon the bursting with contraction and loss of the brain." The doctor also testified that the corpse also presented, on the right side of the thorax, fractures on the same level with the midclavicular line of the five upper ribs; that said fractures had perforated the parietal pleura and that "as a result of said pleural perforations there was blood from the small blood vessels of said serous membrane which lines the hemithorax"; that if death had been caused by bursting he would not have bled as he did, since as soon as the person dies the hemorrhage ceases; that in this case, when the fracture of the ribs and the perforation of the pleura were produced, the wound bled slowly, and that he lived long enough to pass the amount of blood found in the right hemithorax.

manslaughter.[2] At the request of the prosecuting attorney the detective took charge of the investigation of the death of Rosario Matta and as a result thereof Raúl Figueroa García, appellant herein, was accused of murder consisting in having illegally killed Francisco Rosario Matta attacking and assaulting him with an iron pipe causing him wounds which caused his death.

The jury which sat in this case found him guilty of murder in the second degree and he was ordered to serve 10 to 20 years in the penitentiary.

On appeal the commission of the following errors is assigned:

"*First Error*: The trial court erred in admitting defendant's written confession, offered before the prosecuting attorney because from the face of the document it appears that appellant was not warned of his right not to testify against himself and of his right to have legal assistance prior to his confession.

"*Second Error*: The trial court erred in admitting defendant's written confession made before the prosecuting attorney, because said preliminary investigation being a critical stage in the proceeding, defendant was entitled to the constitutional right of the assistance of counsel pursuant to the rule established by the Supreme Court in the case of *White* v. *Maryland*, 373 U.S. 59.

"*Third Error*: The trial court erred in admitting defendant's written confession, offered before the prosecuting attorney, because, even assuming that defendant was not entitled to the absolute constitutional right of legal assistance under the rule in *White* v. *Maryland, supra,* yet he is entitled to the assistance of counsel pursuant to the cases of *Crooker* v. *California*, 357 U.S. 433, and *Escobedo* v. *Illinois*, decided by the Supreme Court of the United States on June 22, 1964.

"*Fourth Error*: The trial court erred in admitting the testimony of witness Martín Rosario Corcino, in which he narrated the oral confession defendant had made to him.

---

[2] Some witnesses testified that the engine driver was accused of involuntary manslaughter, but from the record it does not appear that a warrant of arrest was issued or that any information was filed against him.

"*Fifth Error*: The trial court erred in failing to decide that defendant's confession was coerced as a question of fact and of law, and in having submitted to the jury the determination of the voluntariness of said confession, as a question of fact."

None of the grounds adduced in the first three errors rendered inadmissible defendant's written confession made before the prosecuting attorney. From the face of the document itself (confession) it appears that appellant testified "subsequent to the pertinent legal warnings made to me . . ." and although said appellant testified during the trial on the involuntary character of his confession, he neither alleged nor tried to prove that the prosecuting attorney, at the time of taking his confession in writing, failed to make the pertinent legal warnings.

On the other hand, the facts of the present case do not justify the application of the rules established in *White* v. *Maryland*, 373 U.S. 59; *Crooker* v. *California*, 357 U.S. 433, and *Escobedo* v. *Illinois*, decided by the Supreme Court of the United States on June 22, 1964, in relation to the admissibility of the confession. Let us see.

In *White* v. *Maryland* defendant entered plea of guilty, without the assistance of counsel in the preliminary hearing held before a magistrate, and later, during the trial, said plea of guilty was presented in evidence. Commenting on this case, in *Soto Ramos* v. *Supt. Granja Penal*, 90 P.R.R. 711 (1964), we said the following: "The Supreme Court of the United States held that, as in *Hamilton* v. *Alabama*, 368 U.S. 52, it was a stage in the *Maryland* case as critical or dangerous as was the *Alabama* arraignment and reversed the ruling."

We commented on the case of *Crooker* v. *California*, 357 U.S. 433, 2 L.Ed.2d 1448, in *Rivera* v. *Warden*, 80 P.R.R. 800 (1958). After analyzing the opinion in the case of *In re Groban*, 352 U.S. 330, we said at p. 821 *et seq.*:

"... Shortly afterwards, in the case of *Crooker* v. *California,* 357 U.S. 433, 2 L.Ed.2d 1448, decided June 30, 1958, after the petition for habeas corpus was filed and on the day when we issued the writ, in a majority opinion of which Mr. Justice Frankfurter and Mr. Justice Harlan were part, the Supreme Court decided that a confession given by the accused therein while being interrogated by police officers was not vitiated with coercion and involuntariness in the light of all the circumstances and other facts present, passing for the first time on the coercive and involuntary nature of a confession obtained after denial of petitioner's express request to engage counsel in that investigatory phase.

"Because of the serious due process of law implications that attended the state denial of a request to employ an attorney, so the original says, certiorari was granted. (357 U.S. 434.)

"It was concluded, in the first place, *that the bare fact* of police detention and police examination in private of a person in official state custody did not render involuntary a confession, nor the failure of state authorities to comply with local statutes requiring that an accused be promptly brought before a magistrate. *Brown* v. *Allen,* 344 U.S. 443 (1953); *Fikes* v. *Alabama,* 352 U.S. 191 (1957). It follows therefore that our prosecution system of investigation in private does not fall, *per se,* within the margin of due process. Having so ruled, the Supreme Court then held that petitioner's contention as to coercion depended on denial of his request to engage counsel, and such contention was equally rejected, citing *Brown* v. *Allen,* 344 U.S. 443 (1953); *Stroble* v. *California,* 343 U.S. 181 (1952); *Gallegos* v. *Nebraska,* 342 U.S. 55 (1951), where it had been held that confessions made by indigent defendants prior to state appointment of counsel were not thereby rendered involuntary, even in prosecutions where conviction without counsel violated due process under the Fourteenth Amendment.

"Turning then to the contention that even if the confession was voluntary, its *use* violated due process because it was obtained after denial of petitioner's request to contact his attorney, since it deprived him of his constitutional right to representation and advice from his attorney and, therefore, vitiated the confession itself for lack of due process, even though freely made, the court also rejected the contention. Reaffirming that the assistance of counsel secured in state prosecutions by the

Fourteenth Amendment guarantee of due process, included not only the right to have an attorney appointed by the state in certain cases, but also the right of an accused to a fair opportunity to secure counsel of his own choice, the majority said: (357 U.S. at 439.)

" 'Under these principles, *state refusal of a request to engage counsel* violates due process not only if the accused is deprived of counsel at trial on the merits, *Chandler* v. *Fretag, supra,* but also if he is deprived of counsel for any part of the pretrial proceedings, *provided that he is so prejudiced thereby as to infect his subsequent trial with an absence of "that fundamental fairness essential to the very concept of justice."* [Citations.] The latter determination necessarily depends *upon all the circumstances of the case.'* (Italics ours.)

In view of all the circumstances of the case—a voluntary confession by a college graduate who had attended one year of law school and who knew of his right to keep silent—it was finally concluded that Crooker was not a victim of a prejudicial impact nor had been so taken advantage, as to violate due process of law.

"Again, in *Cicenia* v. *Lagay,* 357 U.S. 504, 2 L.Ed. 1523, decided on the same day as *Crooker,* the Supreme Court faced a similar contention in the light of the fact that in this case defendant requested and was denied during the interrogation an opportunity to confer with the lawyer whom he had already retained. In contrast with *Crooker,* he contended that his confession, even though voluntary, was nevertheless vitiated by police refusal to permit him to confer with counsel during his detention, and that this by itself violated due process, irrespective of the particular circumstances involved. The court rejected once more the contention that petitioner had a constitutional right under the Fourteenth Amendment to confer with counsel in that pre-trial phase, *Crooker, supra.* Establishing the proper balance that must rule in criminal cases between the fundamental right to legal assistance, on the one hand, and the obligation of police authorities to prosecute crime, on the other, Judge Harlan stated for the majority that a satisfactory formula for reconciling these competing concerns is not to be found in any broad pronouncement that one must yield to the other, but instead, in judging whether state prosecutions meet the requirements of due process, this Court has sought to achieve a proper

accommodation by considering a defendant's lack of counsel one pertinent element in determining from all the circumstances whether a conviction was attended by fundamental unfairness." (80 P.R.R. pp. 821–824.)

In *Escobedo* v. *Illinois*, 378 U.S. 478, 12 L.Ed.2d 977, the critical question to be decided was whether, under the circumstances, the refusal by the policeman to honor petitioner's request to consult with his lawyer during the course of an interrogation constituted a denial of the "Assistance of Counsel" in violation of the Sixth Amendment to the Constitution as made obligatory upon the States by the Fourteenth Amendment.

Escobedo was arrested in connection with the death of his brother-in-law. He was released after a writ of habeas corpus was obtained. Upon discovery of additional incriminating evidence against him he was arrested again and taken handcuffed to police headquarters. En route to police headquarters, upon being questioned by the police, he stated his desire to have advice from his lawyer. Shortly after petitioner reached police headquarters, his retained lawyer arrived. The latter tried fruitlessly by all means to obtain permission to speak to his client, who in turn repeatedly asked to speak to his lawyer, without success.

During interrogatory Escobedo was confronted with a certain Di·Gerlando, who was the person who accused him of having made the unfortunate shots. For the first time Escobedo admitted having some knowledge of the crime, accusing Di Gerlando of having shot the victim, Manuel. After that he made other statements further implicating him in the murder plot. Throughout all the interrogatory Escobedo was not advised of his constitutional rights.

■ In reversing the judgment of the Supreme Court of Illinois, the Supreme Court of the United States established the following rule:

". . . where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his 'absolute' constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' . . . and that no statement elicited . . . may be used against him at a criminal trial." (Report of the Solicitor General, p. 3.)

■ We have already stated that although at the beginning engine driver Martín Rosario Corsino was considered as the author of involuntary manslaughter, the detective continued investigating the death of Francisco Rosario Matta, at the request of the prosecuting attorney. They went to the housing settlement of Aguas Claras in Ceiba, where the victim, Rosario Matta, lived, and there they interrogated his widow, Lin García, who testified that on June 16, 1960 her husband, Rosario Matta, her brother Heriberto García, and Raúl Figueroa had begun to drink intoxicating liquor since 1 p.m. at her house;[3] that then they left, her husband being the last one out, and that night was the last time she saw him alive. In view of said information the detective went to appellant's house in the same settlement and he was arrested about 11:00 a.m. for interrogation. He was taken to police headquarters in Humacao and there, for the first time, he orally confessed his participation in the death of the deceased Rosario Matta. Later he repeated his confession in Fajardo before the engine driver, Martín Rosario Corsino, and on the night of that same day he made his written confession before the prosecuting attorney in Humacao. So that when appellant was interrogated at police headquarters in Humacao and the oral confession was pro-

---

[3] From appellant's confession and the testimony of a detective it appears that Miguel Encarnación Ribot (a) Cabo was, also, in the group.

duced, the only fact known to the detective up to that time, which could connect the defendant with the deceased Rosario Matta around the time of the occurrence of the crime, was the fact that they had been together the night before drinking liquor. Up to that time the detective was making a general investigation to determine whether the death of Rosario Matta was accidental, as it appeared to be, or whether it was a murder, and it was not directed against appellant or against any other person as suspect of the commission of the crime.

Considering all the concurring circumstances in the present case the lack of assistance of counsel when defendant's extrajudicial confession was produced does not invalidate the proceeding in which it was used, because (a) said confession was not produced at a critical stage of the proceeding as in the case of *White, supra;*[4] (b) the state did not refuse defendant's request to engage counsel, and the absence of assistance of counsel in the proceedings (should read examination in private) did not prejudice him in such a manner as to infect his subsequent trial with "an absence of 'that fundamental fairness essential to the very concept of justice' ";[5] and (c) the facts in this case are fundamentally distinguishable from the facts in the case of Escobedo, *supra,* as we previously pointed out.

Appellant centers his argument on the written confession made before the prosecuting attorney. He argues that that was a critical stage in the proceeding and that at that time the investigation was directed towards defendant as suspect, for which reason he considers that he was entitled to legal assistance.

However, even supposing, without deciding it, that appellant was right in this contention, the truth is that the confession was not produced at this stage in the investiga-

---

[4] See *Rivera, supra.*

[5] *Crooker* v. *California, supra.*

tion. Defendant first confessed at police headquarters in Humacao and then in Fajardo, when he made a spontaneous narration of his participation in the crime before engine driver Martín Rosario Corcino. Said two confessions are identical to the written confession before the prosecuting attorney. He did not add any other incriminating fact to his confession before the prosecuting attorney.

In view of all the concurring circumstances we have considered inapplicable the jurisprudential rules invoked by appellant.

█ The fourth assignment is frivolous. Our criminal procedure does not compel the prosecuting attorney to take the written sworn statements from witnesses during the interrogatory period, in order that they may be considered as competent witnesses during the proceeding, even if said witnesses depose on defendant's oral confession.

Now then, following the procedure we set forth in *People v. Declet*, 65 P.R.R. 22 (1945), for the admission in evidence of an extrajudicial confession, the prosecuting attorney introduced evidence, the jury being absent, to establish the voluntary character of defendant-appellant's confession. The latter, in turn, introduced evidence to controvert the evidence for the prosecution on this aspect. Upon admittance of said evidence the judge decided, as a question of law, that the confession was voluntary. The jury then heard the same evidence as to whether or not the confession was voluntary. Upon instructing the jury the judge said:

"In order that an extrajudicial confession be admitted and considered by the court, it must be shown before the jury by statements made, that said confession was necessary, that it was freely made, that it was made voluntarily, that defendant was not obliged to testify in any manner whatsoever, and if it be shown that such is the situation, that defendant was not obliged to testify, then, the confession should be taken into consideration in rendering the verdict.

"I want to remind you that, as you have seen, we adjourned because at first, in order that the confession be admitted, the evidence is brought first in your absence. Then, you heard it and the same testimony was again repeated. So that now it devolves upon you to determine whether said confession presented in evidence was voluntary and whether defendant, in any manner whatsoever, was coerced by the police or by any official, to testify in the manner he has done it." (Tr. Ev. 184 to 185.)

This procedure, by which the jury and not the judge decides the controversy of facts in relation to the voluntariness of confessions offered against persons accused of offenses, is similar to the procedure used in the State of New York. In *Stein* v. *New York*, 346 U.S. 156, 97 L.Ed. 1522, the constitutionality of this procedure was sustained, but in the recent case of *Jackson* v. *Denno*, 378 U.S. 368, 12 L.Ed.2d 908 (1964), the *Stein* case was overruled, the National Supreme Court sustaining that the New York rule violated the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States which protects defendant against the use of coerced confessions.[6] This decision is binding on us under the Fourteenth Amendment of the Constitution of the United States or under the provisions of the Bill of Rights of our Constitution, where we adopted the North American constitutional concept of the "due process of law."[7]

■ Therefore, we must decide that it was incumbent on the judge and not on the jury to decide the controversy in fact in relation to the voluntariness of defendant's confession, within the constitutional provisions of the due process of law. Consequently, a hearing will be ordered in order that the judge may decide whether the confession made by appel-

---

[6] To conform our procedure to the decision in the case of Denno, this Court approved, on June 30, 1964, Rule No. 151.1 of Criminal Procedure, and pursuant to our constitutional provisions submitted it on January of this year to the Legislative Assembly.

[7] See the Report of the Bill of Rights Committee, 4 Journal of Proceedings of the Constituent Convention 2565.

lant is admissible as a question of law and of fact. In the event the contrary is decided a new trial will be ordered. In the event of a decision in favor of the admissibility of the confession, the verdict and the judgment will prevail.

