## Commonwealth ex rel. Shaffer, Appellant, v. Cavell.

426

Argued September 29, 1966. Before BELL, C.J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

Ben F. Wright, with him L. D. McDaniel, for appellants.

Richard D. Cicchetti, Assistant District Attorney, and John R. Hoye, District Attorney, filed a brief, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, November 15, 1966:

On December 14, 1948, after a joint trial, the appellants, Clyde Shaffer and Elmer Clark, were convicted by a jury in Fayette County of murder in the first degree. Punishment was fixed at life imprisonment. Motions for a new trial were filed and later

withdrawn. On May 27, 1949, sentence was imposed in accordance with the jury's verdict. No appeal from the judgment was entered. Throughout the above proceedings, the appellants were represented by court-appointed counsel.

On October 29, 1964, Shaffer instituted an action in habeas corpus in the Court of Common Pleas of Fayette County attacking the validity of his sentence and confinement, alleging, inter alia, that constitutionally tainted evidence was admitted against him at trial. On November 6, 1964, the court dismissed the petition without hearing. An appeal from this order was timely filed in this Court. In the meantime Clark instituted habeas corpus proceedings, and action thereon was withheld below pending the disposition of the appeal in Shaffer's case. On October 13, 1965, we vacated the dismissal order in the Shaffer action and remanded the record to the trial court with directions to conduct a hearing [1] to determine if the challenged evidence, i.e., incriminating statements given by Shaffer to the police and introduced in evidence against him at trial were free and voluntary. See, 419 Pa. 218, 213 A. 2d 380 (1965). Subsequently, the trial court held a joint hearing on the Clark as well as the Shaffer petition, and later dismissed both actions.[2] An appeal from that order is presently before us.[3]

---

[1] As required by the decision of *Jackson v. Denno*, 378 U.S. 368 (1964).

[2] Since the trial judge died during the intervening years, the present president judge of the court made an able and intelligent effort to reconstruct and interpret the pertinent incidents surrounding the case. In view of the long passage of time, his undertaking was understandably fraught with difficulty.

[3] When this appeal was argued before this Court, the district attorney of Fayette County did not appear personally or send a representative. This conduct is strongly condemned. It manifests a disrespect for this Court and an incomprehensible lack of official responsibility.

In support of its order dismissing the actions, the lower court filed an opinion reciting its findings and conclusions, particularly: (1) that the incriminating statements given to the police by both Shaffer and Clark were free and voluntary; (2) that evidence thereof was properly admitted at trial; and, (3) that the question of voluntariness of the statements was for the jury to resolve. After a studied and thorough examination of the record, we cannot agree with these conclusions. We will, therefore, reverse.

The factual case history is briefly this:

On Sunday, September 12, 1948, about seven o'clock a.m., one John Walek, 61 years of age, was found lying on a lawn in front of a home located at Continental No. 2, Fayette County, in a dying condition, suffering from severe injuries caused by blows to his head. He had worked as a coal miner; received wages on Saturday, September 11th; engaged in some drinking; and, on his way home laid down on the particular lawn to rest. Some individual, or individuals, later came to the scene and beat him unmercifully on the head with a rock or a stone, and robbed him. He died the following September 17th, without regaining consciousness.

Witnesses reported to the police that Shaffer and Clark were seen in the area of the crime at or about the time the police reasoned it occurred. As a result, they were taken into police custody between 8 and 9 o'clock p.m. on September 12, 1948. A warrant charging them with the murder of Walek issued on September 24, 1948, and on the same day, they were given a preliminary hearing before a justice of the peace and held without bail for court. They were indicted for murder on November 30, 1948, and trial ensued in December 1948.

The Commonwealth, over objection at trial, introduced evidence of incriminating statements made by

Shaffer and Clark to the police during custody. Their guilt was largely predicated upon this evidence. The historical background thereof is this:

Shaffer and Clark were interrogated immediately upon being taken into custody and almost every day thereafter up to and including September 24th. They steadfastly denied any guilt in connection with the crime until September 21st, when Shaffer, for the first time, made some oral admissions which conflicted with his prior declarations of innocence and indicated he knew more about the commission of the crime than first asserted. Later on September 21st, he was asked a series of questions which, together with his answers, were recorded on a disc via an electrically operated dictaphone recording device. Still later the same day, these recordings were played back in the hearing of Clark, who was then asked questions, which, together with his answers, were likewise recorded on a disc. The following day, September 22nd, each made what were termed "corrected" statements, which were also recorded, on similar discs. Later on September 22nd, each made oral statements in answer to questions, which were stenographically recorded and subsequently typewritten. These typewritings were read and signed by Clark and Shaffer on September 24th. In the last mentioned statements, each admitted being in the immediate vicinity at the time the crime was committed, having knowledge thereof, but each named the other as the actual perpetrator. Their statements, as recorded on the discs and in the final typewritten statements, differed in many respects. All of the recordings and written statements were admitted in evidence at trial.

Whether Shaffer and Clark were subjected to any physical abuse or threats of such harm by the interrogators during the period they were in police custody, from September 12th to September 24th, is in serious

dispute. The lower court found such did not occur, and we accept this finding. However, these significant facts appear in the record *as admitted or uncontradicted* by the Commonwealth: (1) That warrants for the arrest of Shaffer and Clark did not issue until the 13th day following initial police custody. (2) That Shaffer and Clark, although in their early twenties, had very limited school education and little or no previous experience with the police. (3) That they were interrogated almost every day during custody by investigating officers for periods of time varying in extent. On one occasion, this consumed ten hours and twenty-five minutes; on another, it continued for nine hours and forty-five minutes. (4) That during the period of police custody, with the exception of the hours of the day consumed by interrogation and two other instances related hereafter, they were kept in separate and solitary confinement and not permitted to contact or communicate with anyone or have anyone communicate with them. This confinement, in most part, consisted of being locked up in separate cells, enclosed by a solid steel door with one small hole therein, measuring 8 by 12 inches, in a section of the jail known as the "punk hole." From September 12th to September 24th, they were not permitted to shave. (5) That during the interrogation sessions, they were without counsel, and not offered such assistance or advised that they could have the same. (6) That the mother of Shaffer was permitted to see and visit with him at the jail for a few minutes on September 13th, but totally denied any such opportunity again until after the preliminary hearing, despite several trips to the jail and requests to see him. (7) That on September 17th, Attorney Russell Smiley of the Fayette County Bar, at the instance of Shaffer's mother, saw Shaffer at the jail and discussed the case with him. However, he was denied the opportunity

of seeing Shaffer again until the day of the preliminary hearing, despite his efforts to do so by way of daily visits to the jail.

In view of all these admitted and uncontradicted facts, it is our firm conclusion, that the statements of Shaffer and Clark were those of overborne individuals and the result of sustained coercive police pressures upon them. Therefore, the statements were not the product of a rational intellect and a free will, were constitutionally invalid, and should not have been admitted at trial. See, *Davis v. North Carolina,* 384 U.S. 907 (1966) ; *Haynes v. Washington,* 373 U.S. 503 (1963) ; *Townsend v. Sain,* 372 U.S. 293 (1963) ; *Fay v. Noia,* 372 U.S. 391 (1963) ; *Reck v. Pate,* 367 U.S. 433 (1961) ; *Blackburn v. Alabama,* 361 U.S. 199 (1960) ; and, *Stroble v. California,* 343 U.S. 181 (1952). The fact that physical abuse or harm was absent is not controlling. As stated in *Blackburn v. Alabama,* supra, "Since Chambers v. Florida, 309 U.S. 227, this court has recognized that coercion can be mental as well as physical, and that the blood of the accused is not the only hallmark of an unconstitutional inquisition." See also, *Fikes v. Alabama,* 352 U.S. 191 (1957).

The instant case was tried many years before *Miranda v. Arizona,* 384 U.S. 436 (1966), and *Escobedo v. Illinois,* 378 U.S. 478 (1964), and since these decisions are not retroactive (*Johnson v. New Jersey,* 384 U.S. 719 (1966)), the convictions and judgment involved may not be invalidated solely on the ground that the new rules governing in-custody police interrogations announced therein were not followed. See, *Davis v. North Carolina,* supra. However, the absence of the safeguards prescribed in these cases are factors to be considered in determining the voluntariness issue, even though the trial involved occurred before these decisions were announced. See, *Johnson v. New Jersey,*

supra. But completely apart from these considerations, the case law for decades has proscribed the use of "compelled" confessions. See, *Miranda v. Arizona,* supra, and cases cited therein. The undisputed facts in this record including, that the appellants were subjected to long periods of intensive interrogation, while being completely isolated and cut off from the outside world for a long period of time, lead to no other conclusion but that the statements involved were the result of compulsion.

Order reversed and record remanded with directions that a new trial be granted and conducted within a reasonable time; otherwise, the writ should issue.

Mr. Chief Justice BELL concurs in the result.