**Willie James HOWARD, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 54696.

Supreme Court of Missouri,
Division No. 1.

April 13, 1970.

---

1. This was established by defendant in his alibi evidence.

Edwards & Robison, by James R. Robison, Sikeston, for appellant.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

Appeal from denial of relief, on motion under Supreme Court Rule 27.26, V.A.M.R., to set aside judgment and sentence of ten years' imprisonment on charge of robbery in the first degree.

The issue here presented relates to a statement allegedly made by appellant, Willie James Howard, admitting his participation in the offense with which he was charged and which was introduced in evidence at his trial which resulted in a jury verdict of guilty. Appellant's contention is that the evidence on the 27.26 hearing clearly showed that he was unable to read and understand the statement and therefore it cannot be considered as a voluntary statement.

The robbery with which appellant was charged occurred at Sikeston, around 9:00 P.M., on Sunday, October 17, 1965. A complaint was filed on that date, charging appellant with the offense. He was arrested around midnight the same evening.

The next day, Howard was taken by Sikeston police officers to Poplar Bluff where a polygraph test was administered by a state highway patrolman. Following the polygraph test, one of the Sikeston officers typed a statement which appellant signed at the patrol office. That statement, the voluntariness of which is here in issue, read as follows:

"I Willie James Howard do make the following free and voluntary statement to Lt. James E. Stone, Officer Richard N. Wallace, who have identified themselves to me as police officers with the Sikeston Missouri Police Department. I have been advised by these officers that I do not have to make any statement and that any statement I do make can be used against me in a court of law. There have been no threats or promises of reward been made to me in order to get me to give this signed statement. I have been advised that I have the right of an attorney prior to giving this signed statement.

"My name is Willie James Howard. I live at 321 Alabama Street, Sikeston, Missouri, with my father and mother. I am 22 years old and I am not married. Sunday night, October 17th, 1965, I was over at Jimmerson's Pool Hall. I seen these two boys standing up talking. I told this one to let me have some money and he gave me some money. I think there was about a dollar in change is what he gave me. He then went over to the car and I told him to get out of the car and he did. I told him to put his hands over his head on the car and he did. I then went into his pocket and got one ten dollar bill and I turned back and walked away. I walked down to Ben's Place and I was standing in Ben's Place and a little later the police came in and got me and took me to the police station and put me in jail.

"I have read this statement which consists of this one page and find it to be true to the best of my memory.

"Signed Willie J. Howard. Witnesses: J. E. Stone. Richard N. Wallace."

Preliminary hearing was held November 2, 1965. An information charging the offense was filed November 10, 1965, and defendant was found guilty by a jury on January 7, 1966. A motion for new trial was filed, but the appeal was not perfected.

At the hearing on the 27.26 motion, held October 18, 1968, movant offered evidence that, in 1960, examination at the Missouri State Training School where movant was then confined, indicated an I.Q. of 49. The director of the department of corrections, in a communication dated May 16, 1968, stated that the department rated the movant "as having an estimated border-line intelligence." Mr. Donald Miller, a certified psychological examiner and guidance counselor, examined movant on October 16, 1968. He found movant to have an I.Q. of 51. He stated that a person with such a low score would be incapable of reading competently. Miller expressed the opinion that a person of movant's mental capacity as indicated by the test "would not be able to read competently the vocabulary" in the October 18, 1965 statement. " * * * [A]lso even if it were read to him, there is a good chance * * * that he wouldn't comprehend enough to be able to understand the entire [statement]."

Movant, testifying at the 27.26 hearing, acknowledged that he had signed the statement. He said that he did so after being told that he failed the polygraph test. He stated that he was forced to sign the statement. "[T]hey threatened to beat me, I figured." He said that he did not know what the statement said, that no one read it to him and that he couldn't read it himself.

Testifying on behalf of the state at the 27.26 hearing, James Stone, one of the two officers to whom Howard made the statement, testified that he began working on the case Monday, October 18, 1965; that the victim came to the police station and identified Howard; that he told Howard that the victim had identified him; that Howard denied taking part in the crime; that he asked Howard to take a lie detector test and Howard agreed to do so; that he and Wallace took Howard and Willie Green to Poplar Bluff; that, after the test, he told Howard that he was lying; that Howard then related to him the facts incorporated in the statement; that he then reduced the statement to writing on a typewriter; that a copy was given Howard to read; that Howard began to read it, but, because of the difficulty he had in doing so, particularly with respect to the larger words, such as "voluntary" and "identified," the officer took over and read the entire statement to Howard, who followed along on the copy he had; that Howard indicated no correction or change which should be made and then signed the statement.

Stone testified that he advised Howard of his right to an attorney "the very first thing." "I told him he didn't have to talk about it, that anything he said to me could be used against him in a court of law. I told him that he was entitled to an attorney, told him if he didn't have the money for one that one would be appointed for him. I also asked him did he want to talk to anybody. * * * He indicated that he did not want to." Stone testfied that similar advice was given movant at the patrol office in Poplar Bluff. Stone testified that no threats or promises were made in order to induce Howard to sign the statement.

The trial court found that movant's statement was voluntarily made. The trial court's statement of its findings of fact and conclusions of law demonstrates that it considered all of the facts and circumstances in passing on the claim that movant's statement was involuntary. He resolved the issue of the alleged threat of bodily harm as the inducement for the signing of the statement against the movant, finding the testi-

mony of Officer Stone credible. No complaint is made here of the finding on that issue. The trial court held, in effect, that movant had not sustained the burden of showing that his statement was not knowingly and understandingly made.

The question before us on this appeal is whether or not the trial court's finding and judgment are clearly erroneous. Supreme Court Rule 27.26, V.A.M.R. The applicable law is not questioned. The movant's statement is not to be considered as voluntary unless it was the product of a rational and free will. Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948. The "totality of the circumstances test" determines that question. Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895; Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423. The education, mental capacity and prior experience with criminal law of the accused are circumstances to be considered. Reck v. Pate, supra; Fikes v. Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246.

On these factors, the trial court had before it evidence that movant was twenty-two years of age at the time of his arrest; that he had left school in the eighth grade at the age of sixteen; that he had previous brushes with the law which had resulted in his commitment to the State Training School and in his being subject to the Second Offender Act. The trial court, as he had the right to do, rejected movant's testimony that the statement had not been read to him before he signed it, believing the testimony of Stone that the statement was read to movant and that he followed along on the copy furnished him.

Thus, the ultimate basis of movant's claim for relief must be the testimony that movant's mental capacity precluded his understanding of the import and meaning of the statement, even though it was read to him. Opposed to this testimony was the testimony of Stone that, at the time, Howard gave no indication that he did not understand the contents of the statement.

Furthermore, the movant at the hearing certainly gave the court sufficient reason for the rejection by the court of the conclusion of movant's psychologist. The latter had based his opinion upon his belief that movant would have been unable to comprehend the meaning of words such as "voluntary." When the movant, as a witness, was asked: "You know what 'voluntary' is?", he replied: "Voluntary is just on my own free will."

In these circumstances, we are in no position to say that the trial court's rejection of the psychologist's opinion was clearly erroneous. So concluding, no grounds for reversal of the trial court's judgment appear.

Judgment affirmed.

HOUSER and HIGGINS, C., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

SEILER, P. J., HOLMAN, J., and Mc-MILLIAN, Special Judge, concur.