An order will be entered in accordance with this opinion.

**William Earl FIKES, Petitioner,**

v.

**Bill LONG, as Warden of Mt. Meigs Diagnostic Center, Respondent.**

**Civ. A. No. 74–396–N.**

United States District Court, M. D. Alabama, N. D.

Jan. 21, 1975.

Edward F. Glynn, Jr., Hogan & Hartson, Washington, D. C., James L. Chestnut, Jr., Selma, Ala., for petitioner.

Donald G. Valeska, II, Asst. Atty. Gen., of Ala., Montgomery, Ala., for respondent.

## ORDER

VARNER, District Judge.

This cause is submitted for final order of this Court on petition for writ of habeas corpus filed herein December 24, 1974, seeking to set aside Petitioner's conviction of rape by the Circuit Court of Dallas County, Alabama, on June 24, 1953, on the grounds that a confession upon which his conviction was partially based was illegally obtained. The primary question for this Court is whether, under the circumstances of this case, the Petitioner is barred from relief because of having by-passed his State remedy. The Supreme Court in 1957 reversed a burglary conviction of the Petitioner and set aside a judgment and sentence of death against the Petitioner because of involuntariness of two confessions in that case, Fikes v. Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957). Those confessions are so closely related to the confession in this case that all such confessions, having grown from the same poisonous vine, must suffer a similar fate.[1]

Petitioner sought no review whatsoever of the instant rape case, for the conviction of which he was given a sentence of 99 years, until he filed a petition in the State Court for writ of error coram nobis on March 30, 1972. Petitioner's prayer for relief was denied by the trial court and on appeal. While the pleadings in that case did not specifically charge that the confession upon which Petitioner's conviction was partially based[2] was involuntary, the hearing was held, apparently, and issue was joined upon the issue of the involuntary confession.

The Respondent contends that the Petitioner has deliberately by-passed his State remedy by not having appealed from his conviction for rape. The

---

1. In the burglary case, confessions offered in evidence were obtained on both May 21 and May 26, 1953, while in the instant rape case the Petitioner confessed only on May 26, 1953. However, the circumstances leading to the two May 26 confessions were identical. The Petitioner was allowed to see his father on May 24, 1953, two days before his confession in the instant case, whereas he had been denied the right to see his father on May 19, 1953, one day before his original confession in the other case. As to form, the confessions in the burglary case were answers to officers' leading questions while the confession in the instant case was Petitioner's narrative rendition of the circumstances in his own words.

2. In this case, as distinguished from the burglary case, Fikes v. Alabama, supra, the victim testified that she could identify her assailant, the Petitioner, so that the conviction did not stand almost entirely upon the confession alone.

State's position is strengthened considerably by the fact that the Petitioner did appeal his conviction of burglary which occurred at about the same time as his conviction for rape and was successful in having the conviction for burglary set aside because of the use in the trial of that case by the State of the companion confession to that now in question in this case. The Petitioner contends that he did not appeal the rape conviction and sentence of 99 years because of his fear of a death sentence on a new trial of this case.[3] The Petitioner in this case, like Noia, and so many other convicts who seek to equate their dilemma to that of Noia, has insisted that he, too, feared the death penalty upon retrial of this case. This was a realistic possibility. He had already been given a death sentence in the same jurisdiction in a weaker case[4], and there were available for prosecution several other cases against this Petitioner to which he had likewise confessed. It may reasonably be assumed that the State, in relying on Petitioner's failure to appeal his rape conviction, gave up the opportunity to prosecute him in numerous other cases to which Petitioner had confessed and which, had the Petitioner insisted upon his known rights at the time, the State could have, and the Solicitor would have had an obligation

3. His position is strongly parallel to that of Noia in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), wherein the evidence showed that Noia did not appeal because he did not wish to saddle his family with an additional financial burden, and he had no funds of his own and, further, that, if successful, he might get the death sentence if convicted on a new trial (footnote 3, at pages 396–397, 83 S.Ct. at page 826). In that case the judge, in sentencing Noia, stated: "I have thought seriously about rejecting the recommendation of the jury in your case, Noia, because I feel that if the jury knew who you were and what you were and your background as a robber, they would not have made a recommendation. * * *." (footnote 3, page 397, 83 S.Ct. at page 826.) The Supreme Court found (at page 440, 83 S.Ct. at page 849) that, "[T]he language of the judge in sentencing Noia, (heretofore quoted), * * *, made the risk that Noia, if reconvicted, would be sentenced to death, palpable and indeed unusually acute." However, that Court in explaining the question of whether or not a petitioner has bypassed his State remedy stated the following:

"* * * If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. cf. Price v. Johnston, 334 U.S. 266, 291 [, 68 S.Ct. 1049, 1063, 92 L.Ed. 1356]. At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. cf. Carnley v. Cochran, 369 U.S. 506, 513–517 [82 S.Ct. 884, 888–891, 8 L.Ed.2d 70]; Moore v. Michigan, 355 U.S. 155, 162–165 [78 S.Ct. 191, 195–197, 2 L.Ed.2d 167]. * * * The application of the standard we have had adumbrated to the facts of the instant case is not difficult. Under no reasonable view can the State's version of Noia's reason for not appealing support an inference of deliberate by-passing of the state court system. For Noia to have appealed in 1942 would have been to run a substantial risk of electrocution. His was the grisly choice whether to sit content with life imprisonment or to travel the uncertain avenue of appeal which, if successful, might well have led to a retrial and death sentence. See, e. g., Palko v. Connecticut, 302 U.S. 319 [58 S.Ct. 149, 82 L.Ed. 288]. He declined to play Russian roulette in this fashion. This was a choice by Noia not to appeal, but under the circumstances it cannot realistically be deemed a merely tactical or strategic litigation step, or in any way a deliberate circumvention of state procedures. This is not to say that in every case where a heavier penalty, even the death penalty, is a risk incurred by taking an appeal or otherwise foregoing a procedural right, waiver as we have defined it cannot be found. Each case must stand on its facts. * * *" (at pages 439–440, 83 S.Ct. at page 849).

4. His attempt in that case at rape was unsuccessful, and the victim was unable to recognize him in court, Fikes v. Alabama, supra.

to, prosecute. Like Noia, Petitioner, when he learned of his possibilities of setting the instant case aside, was given only a "Hobson's choice", but unlike Noia, Petitioner's election not to appeal the rape case tactically and strategically encouraged the State of Alabama not to prosecute the Petitioner for the other crimes which he had then confessed.[5] Nonetheless, the potential of the prosecutions for numerous capital cases placed Petitioner in an even greater disadvantage than Noia if he had sought a new trial.

■■   The burden on the taxpayer of assuring each criminal defendant of a fair trial is extreme but necessary. Whatever the cost, the defendant must be assured that a fair trial is available to him and that, should some error occur in that trial, a responsible body will, at the application of the defendant, correct the error. Further review proceedings are available on coram nobis and habeas corpus should the defendant be convicted by virtue of some constitutional error; however, should the criminal, knowing of the error, inexcusably fail to seek state court review thereof for strategic or tactical reasons or any other reasons that can fairly be described as the deliberate by-passing of those State procedures, the federal court may, on habeas hearing, deny him any relief from the error which he himself understandingly and knowingly did not call to the state court's attention.

■   Fikes apparently knew of the ground for setting aside the conviction in the instant case. His death sentence was set aside for the ground. He forewent the opportunity to have the instant conviction set aside in the hope of inducing the State not to prosecute him for several other capital crimes which he

had admitted and in fear of being given the death sentence upon a new trial of the instant case. Nonetheless, he faced the same "grisly choice" in deciding not to appeal as that faced by Noia, that is, the choice between submitting to his 99-year sentence or seeking a new trial which might involve either death or vindication by the jury. Fikes faced even more of a certainty than Noia of the death penalty since he had admitted to several capital crimes for which he hoped the State would forego prosecution in consideration of knowledge of permanency of his 99-year sentence in the instant case.

It appears to this Court that the inescapable effect of Fikes v. Alabama, supra, on the question of voluntariness of the confession in this case is that said confession was involuntary and unconstitutionally used in the conviction of Fikes in the instant case.

Almost as certainly, Fay v. Noia, supra, compels the conclusion that Fikes, by electing to forego his right in the state court to appeal his unconstitutional conviction, did not by-pass his State remedy to the extent that he should be denied his right to habeas corpus in this Court. Bell v. Alabama, 5 Cir., 367 F.2d 243, cert. den. 386 U.S. 916, 87 S.Ct. 859, 17 L.Ed.2d 788, dictates that State remedies are exhausted in a case such as this. Accordingly, it is

Ordered, adjudged and decreed that the writ of habeas corpus issue to the Respondent Long in favor of Petitioner Fikes and that, unless the State within 60 days hereof institutes further prosecution of Petitioner, the said Respondent release Petitioner from further restraint by the State of Alabama. It is further

Ordered that no costs be taxed in this case.

---

5.  Apparently, those other confessions were also unconstitutionally coerced.