OPINION OF THE COURT
Lawrence J. Finnegan, Jr., J.
In a classic stalking case of major dimension, defendant was charged, inter alla, in two separate indictments with attempted murder in the second degree, assault in the second degree, *117 criminal mischief in the third degree and four counts of criminal contempt in the second degree. The crimes arose from an ongoing and escalating campaign of harassment defendant allegedly perpetrated against complainant, Italia Parisi, including four alleged violations of court orders of protection.
Pursuant to negotiations between defense counsel and the District Attorney’s office,[1] it was agreed that defendant would plead guilty to the top counts of both indictments in satisfaction of all counts contained therein. Although not appearing in the record of proceedings, a primary condition of the pleas was defendant’s agreement to return to his native country, Egypt, never to return to the jurisdiction of the court.[2] In his motion papers, defendant disputes that the pleas were conditioned upon his agreement to refrain from reentering the United States. Rather, defendant asserts that the plea agreement was contingent upon his agreement never to return to the State of New York, a condition which, he maintains, he did not willingly violate.
On May 14, 1991, before the Justice then presiding (now retired), defendant entered a plea of guilty to attempted murder in the second degree on indictment No. 952/91 and a plea of guilty to criminal mischief in the third degree on indictment No. 4163/90, in satisfaction of all counts contained in each indictment. Defendant acknowledged the rights he was forfeiting in voluntarily declining to proceed to trial. He also allocuted to facts underlying the crimes.
Upon inquiry from the court, defendant stated that "no promises” had been made to him with respect to the sentences to be imposed upon his guilty pleas (May 15, 1991 transcript, at 12, lines 19-23). The plea transcript further reveals:
"the court: Have any promises, Mr. Warren, been made to this defendant that you’re aware of with respect to these indictments?
"[ado]: Could we approach?
"the court: Yes.
"[Discussion held at bench off the record.]
*118 "the court: All right. You already answered. Have any other promises been made to this defendant?
"[ado]: No Judge.” (Transcript, at 12, lines 24-25, at 13, lines 1-9.)
Near the conclusion of the plea proceedings, the court advised defendant that if he did not appear on the date of sentencing, the court would impose "consecutive sentences, maximum sentence on indictment 952 of '91 is 12 and-a-half to 25 years and under [indictment] 4163 of '90, its 2 to 4 years.” The following remarks ensued:
"[ado]: For the record, is the defendant consenting to the taking of these pleas under the specification and terms that the Judge has set out, namely, that he can be sentenced because of these pleas to two terms [sic] of 12 and-a-half to 25 years and, in addition, the second, term from 2 to 4 years by virtue of these pleas if he’s not in Court on the date of sentencing?
"the court: Yes, Mr. Abbas?
"the defendant: Yes.
"[ada]: Are you agreeing—
"the court: It’s not a question — the Court has indicated what it will do and there are certain limitations, and I think it’s sufficient at this time.
"[ado]: Okay.
"the court: What’s indicated, he subjects himself to a maximum consecutive sentences on both these indictments.
"Very well, defendant remanded.
"me. warren: The other arrangement?
"the court: Off the record.
"[Discussion held off the record.]” (Transcript, at 17, lines 15-25, at 18, lines 1-14.)
On May 17, 1991, two days following the entry of the guilty pleas, defendant was arraigned as a predicate felon with respect to an April 26, 1990 Queens County conviction. The record of the May 17, 1991 proceeding reveals:
"the court: Defendant having admitted he will be adjudicated a predicate felon for the purpose of sentencing [sic]. Yes, Mr. [ADA] any application on the part of the People?
"[ada]: Its not an application. It’s the application of the defense counsel asking for parole and we are consenting to it based upon the following: In my earlier discussions with defense counsel, with the executives of the District Attorney’s *119 office and. the District Attorney in consultation with members of the Egyptian Embassy and based on their representations we, as well as the complainant, are consenting to parole of this defendant today upon the arrival of members of the District Attorney’s detective squad, whereupon he will be in their escort today.
"And under those circumstances we consent to his parole at this time.” (Transcript, at 4, lines 17-25, at 5, lines 1-13.)
The court then paroled defendant into "the custody of the District Attorney’s representatives” (transcript, at 5, lines 16-17).
Thereafter, defendant maintains, he was escorted to the airport by investigators from the District Attorney’s office.
On June 5, 1991, the scheduled sentencing date, defendant was sentenced to consecutive, indeterminate terms of imprisonment of 12x/2 to 25 years on indictment No. 952/91 and 2 to 4 years on indictment No. 4163/90. Not surprisingly, defendant was not present. Nor was his attorney. A bench warrant was ordered.
In January 1995, defendant was detained in Pennsylvania on a traffic stop. A computer check revealed the presence of the outstanding warrant issued in connection with the instant indictments. Defendant was subsequently returned to New York and the People moved to execute the sentences imposed on June 5, 1991.
Defendant now moves to set aside the sentences and to vacate his guilty pleas. For the reasons that follow, defendant’s motions are granted.
This case presents a very unusual scenario in which the parties[3] and, apparently, even the court, agreed to a plea bargain, which effectively served to remove defendant from the judicial process. Consequently, it comes as no great surprise that the primary condition upon which defendant’s guilty pleas were based was never set forth in the record. Whether the condition required defendant to refrain from returning to New York State (as defendant asserts was his understanding of the agreement, which he maintains he never willingly violated) or to refrain from reentering the United States, such condition enabled defendant to absent himself from the court’s jurisdiction, thereby avoiding the service of any period of incarceration. *120 That, pursuant to the stipulation, defendant knowingly and voluntarily entered his guilty pleas and agreed to be sentenced in absentia, in the absence of his attorney, in no way legitimizes the entire unseemly arrangement. For this court to adhere to the original plea bargain and execute the sentences imposed on June 5, 1991 would, indeed, "bring the result below the Plimsoll line of 'due process’ ” (Fikes v Alabama, 352 US 191, 199 [Frankfurter, J., concurring] [1957]).
Accordingly, this court sees no just alternative other than to grant defendant’s motions to vacate both the sentences and the pleas and to return the parties to status quo. The People are, thus, directed to be ready for trial[4] within a reasonable time of this decision and order.

. At the time of the pleas and original sentencing, John J. Santucci was the District Attorney of Queens County.

. At the time the instant indictments were initially conferenced in chambers before this court, the prosecutor, who negotiated the pleas, and defense counsel acknowledged that such condition was a predominate aspect of the plea agreement. However, what was not clear was whether defendant was required to refrain from reentering the United States.

. The complainant, Italia Parisi, was also present during the May 15, 1991 plea proceeding and placed on the record her consent to the pleas (transcript, at 8, lines, 8-29, at 9, lines 1-4).

. On April 24, 1996, defendant was convicted before this court, after a jury trial, of attempted murder in the second degree, assault in the second degree, reckless endangerment in the first degree, leaving the scene of an incident without reporting, resisting arrest, criminal mischief in the third degree and four counts of criminal contempt in the second degree. On May 14, 1996, defendant was sentenced to a period of incarceration of 121/2 to 25 years on the top count of attempted murder in the second degree plus four, one-year consecutive periods for each of the four counts of criminal contempt in the second degree for a total term of imprisonment of 161/a to 25 years.