266 So.2d 643

In re Earl FLANNAGIN

v.

STATE of Alabama.

Ex parte Earl Flannagin.

8 Div. 463.

Supreme Court of Alabama.

Sept. 7, 1972.

178

William J. Baxley, Atty. Gen., and J. Victor Price, Jr., Asst. Atty. Gen., for the State.

Robert Straub, Decatur, Charles E. Carmichael, Jr., Tuscumbia, for petitioner.

McCALL, Justice.

The defendant Flannagin was convicted of murder in the first degree and sen-

tenced to death in accordance with the verdict of the jury. His conviction was affirmed by the Court of Criminal Appeals, and this court granted his petition for a writ of certiorari under Supreme Court Rule 39, as amended, Appendix to Tit. 7, pocket parts, Code of Alabama, Recompiled 1958, which provide in their pertinent part that a petition for writ of certiorari to the Supreme Court in a criminal case in which the death penalty was imposed as punishment will be considered by the Supreme Court as a matter of right.

 The Automatic Appeal from Death Sentence Act, Tit. 15, § 382(1)–(13), Code of Alabama, Recompiled 1958, provides in part for a consideration of all of the testimony by the appellate court in all cases of automatic appeals, to determine if the verdict is so decidedly contrary to the great weight of the evidence as to be wrong and unjust so as to warrant granting a new trial. We think § 382(10) of this Act, providing for reviewing the testimony, is to be read and considered in pari materia with Supreme Court Rule 39, providing for certiorari, because Tit. 13, § 111(2) of the Code, states that the Court of Criminal Appeals shall have exclusive appellate jurisdiction of all felonies. The petitioner Flannagin, having had a full review of the record of his conviction by an appeal to that court, he is not entitled to another review by appeal. The Automatic Appeal Act, providing for a consideration of all the testimony expressly relates to review by appeal, and nothing is mentioned therein about considering the testimony in the record on review by certiorari to this court. Therefore we will abide by our decisions that review by writ of certiorari is limited in this court to questions of law, which may include misapplication of the law to the facts as found by that court from the record before it. This court looks to the opinion of that court alone for findings of fact. Life & Casualty Ins. Co. of Tennessee v. Womack, 228 Ala. 70, 71, 151 So. 880; Mutual Savings Life Ins. Co. v. Osborne, 247 Ala. 252, 23 So.2d 867;

Barber Pure Milk Co. v. Young, 263 Ala. 100, 81 So.2d 328.

Petitioner alleges that five veniremen were improperly challenged for cause by the State because of their alleged general opposition to capital punishment and that therefore he was denied a fair and impartial jury.

The United States Supreme Court held in Witherspoon v. Illinois, 391 U.S. 510, 522, 88 S.Ct. 1770, 20 L.Ed.2d 776, that:

" * * * a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced *general objections* to the death penalty or expressed conscientious or religious scruples against its infliction. * * *" (Emphasis supplied.)

In Boulden v. Holman, 394 U.S. 478, 89 S. Ct. 1138, 22 L.Ed.2d 433, the Supreme Court reaffirmed the test it had previously stated in *Witherspoon*, using the language which follows:

" * * * 'The most that can be demanded of a venireman in this regard * * * is that he be willing to consider all of the penalties provided by state law, and that he not be *irrevocably committed*, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings. * * *'" (Emphasis supplied.) 394 U.S. at 482, 89 S.Ct. at 1140.

The Court of Criminal Appeals concluded, after due consideration, that the five veniremen challenged by the State exhibited an "irrevocable commitment" to vote against capital punishment. None of the related evidence being set forth in the opinion of the Court of Criminal Appeals, we are bound by its finding of fact. Clayton v. Ragsdale, 276 Ala. 321, 161 So.2d 804

■ We hold that the Court of Criminal Appeals applied the proper constitutional standards in deciding the issue and that there was no error in the court's ruling.

Petitioner contends that the acting district attorney and the trial court asked leading questions of the prospective jurors, so that their true feelings were obscured. The Court of Criminal Appeals' opinion sets out no evidence with respect to the specific questions asked of veniremen, and this court will not consider any evidence not set out by that court. Clayton v. Ragsdale, supra.

■■ However, we do point out that it is a primary responsibility of the trial court, under Tit. 30, § 6, Code of Alabama, 1940, to see that a qualified jury is impaneled. Under Tit. 30, § 52, either party has the right to examine jurors as to their qualifications, interest, or bias that would affect the trial, and the right under the direction of the court, to examine jurors as to any matter that might tend to affect their verdict. In qualifying a jury, the court must apply various tests of eligibility and impartiality which are couched in language unfamiliar to the average venireman. If jurors are asked to state their views in their own words on a question, such as their willingness or unwillingness to impose the death penalty, they may well answer in language in no respect similar to the language of the test which must be applied. This will impose on the court the additional duty of making further inquiry. Therefore the court may ask specific questions in the terms of the test. Such questions, though leading, are in many instances necessary. This method of qualifying the jury was approved in Mays v. State, 218 Ala. 656, 120 So. 163, where this court held that on voir dire examination of jurors it is safer to adopt, as nearly as practicable, the language of a statute (§§ 55 and 57 of Tit. 30 of the Code), subject to an explanation when not understood by the jurors. See Seibold v. State, 287 Ala. 549, 567, 253 So.2d 302.

## II.

Petitioner further alleges that the Court of Criminal Appeals erred in holding that the trial court did not commit error when it overruled defendant's objection to the admission in evidence of deceased's bloody shirt.

In support of this contention, petitioner has directed our attention to cases from other jurisdictions which hold that in a homicide prosecution introduction of blood-stained articles of clothing should be restricted to a case where they are relevant to a material issue and not merely cumulative of a fact which has been proved, or which has not been denied. McElfresh v. Commonwealth, 243 S.W.2d 497 (Ky.1951). Thus, for example, where the identity of the deceased was unquestioned and where the nature of the wound and its location, character, and fatality either were undenied by accused or were established by other evidence, it was error to admit in evidence clothing worn by deceased when killed. Burke v. Commonwealth, 249 S.W. 2d 764 (Ky.1952); State v. Creed, 299 Mo. 307, 252 S.W. 678. Such is not the law of Alabama.

■ It is a long established rule of this State that demonstrative evidence, such as clothing worn by deceased at the time of the killing, is admissible if it tends to shed light on any material inquiry, even though such evidence is only cumulative of other evidence and tends to inflame the jury. Barbour v. State, 262 Ala. 297, 78 So.2d 328; Ray v. State, 253 Ala. 329, 45 So.2d 4. The rule regarding admissibility was set forth with clarity in Rollings v. State, 160 Ala. 82, 86–88, 49 So. 329, 331 as follows:

"The clothing of deceased, as well as that of the accuased, . . . (sic) are usually held admissible on trials of homicide. There are only a very few cases in which they have been excluded, when offered as evidence for the inspection of the jury, if tending to elucidate the transactions, to identify any of the par-

ties, to connect the accused with the crime, or to show the character of the wound, motive or intent of the killing, or degree of the crime—whether the killing was in self-defense or not. If such objects tend to corroborate or disprove, illustrate or elucidate, any other evidence, they are admissible * * *.

"The wearing apparel of deceased, showing the location of the bullets, the character and nature of the wound, the blood stains, etc., were properly admissible under the rules stated above, and *it is no reason to exclude them that these matters might be shown by other evidence*, or that these objects might prejudice the jurors. * * *" (Emphasis supplied.)

We believe that the Court of Criminal Appeals correctly distinguished Boyette v. State, 215 Ala. 472, 110 So. 812, in which a judgment of conviction was reversed for improper admission of deceased's clothing, from those cases which state the general Alabama rule, that the victim's clothes which bear marks of violence are admissible for the purpose of showing the location of the wounds on the body, even where the location of the wounds is not disputed by defendant. This distinction has been recognized by this court in its opinions, such as Barbour v. State, 262 Ala. 297, 309, 78 So.2d 328, where we made the following statement:

"* * * In these cases [*Boyette*, supra, and Langley v. State, 32 Ala.App. 163, 22 So.2d 920] the clothing was not pierced by the bullets causing the deadly wounds and, therefore, did not 'tend to corroborate or disprove, illustrate or elucidate any other evidence'. Here, the clothing showed the location of the bullet holes and was relevant,' as shedding light upon the character and location of the wound(s) on the body, though it was merely cumulative evidence, and there was no dispute.' * * *"

■ Petitioner asserts that the shirt contained no bullet holes and that it should, therefore, not have been admitted, relying on *Boyette,* supra. In his brief he points to testimony of the witness, used to introduce the shirt, that he did not find "any type of hole or bullet wound" in the shirt. No mention is made of this testimony in the Court of Criminal Appeals' opinion, and we will not go to the record to find it. Clayton v. Ragsdale, supra.

■ The Court of Criminal Appeals, after examining the shirt under Supreme Court Rule 51, described it in this language: "It is blood stained and has a hole about ⅛ of an inch in diameter located ½ of an inch above the right front breast pocket." The court concluded that "the hole was sufficiently large (approximately the same diameter as the .22 cal pistol used) to have permitted the jury to infer that a bullet could have made the hole in question." This factual determination made by the Court of Criminal Appeals after its examination of the shirt is conclusive on us. Clayton v. Ragsdale, supra.

■ There is no merit in petitioner's contention that the trial court erred in the admission of deceased's shirt.

The trial court admitted into evidence over defendant's objection a small pocket knife which was found unopened in the victim's pants pocket. After carefully reading the opinion of the Court of Criminal Appeals, particularly those few statements referring to the pocket knife, we can find no ground for holding the knife inadmissible. Nor can we accept the accused's statement in brief as to its condition or lack of materiality. As previously stated, we are bound by the findings reached by the Court of Criminal Appeals on the record and stated in its opinion. Therefore, as the opinion of that court discloses nothing to show that the knife was erroneously admitted into evidence, and as we will not search the record to discover such facts, there is no cause for reversal on this point.

### III.

We affirm the Court of Criminal Appeals in holding that the trial court committed no error in admitting the tape recording of a confession made by the defendant.

In his brief the petitioner contends that no effort was made to establish that the [recording] machine or the tape were accurately or properly used. However, the opinion of the Court of Criminal Appeals states that the recorded confession had been played back beforehand "in the court's presence," and that in all instances the proper predicates were shown. Presumably, then, it was established that the recording machine was accurate, that it was properly used by a qualified operator, and that the tape was accurate, as well as that the statement was voluntarily made and audible. At least, there are no facts in the opinion which indicate otherwise. Therefore, we cannot here consider petitioner's contention. We have uniformly held that we would look only to the opinion of the Court of Appeals for the facts and that we would not review the evidence, as contained in the record, to determine for ourselves what the facts of the case really were. Wunderlich v. Southern Const. Co., 234 Ala. 178, 174 So. 318; Ex parte Thaggard, 276 Ala. 117, 118, 159 So. 2d 820.

" ' " * * * On certiorari here we do not review conclusions of fact which the Court of Appeals makes from evidence stated in its opinion, but will only determine whether it has correctly applied the law to the conclusions so found. * * *" ' " Ex parte Thaggard, supra; Sims v. Warren, 248 Ala. 391, 27 So.2d 803; Reichert Milling Co. v. George, 230 Ala. 589, 162 So. 402.

■ For the above reasons, we will not reverse the judgment of the Court of Criminal Appeals on the ground that the proper foundation for playing the recording was not laid.

The next question for our determination is whether there was reversible error, under Wright v. State, 38 Ala.App. 64, 79 So.2d 66, cert. denied 262 Ala. 420, 79 So.2d 74, in the trial court's failure to order that a transcription be made of the recording before playing it in the jury's presence. Petitioner has asserted that the procedure set forth in the following language from *Wright*, supra, makes this mandatory on trial courts:

"To insure the accused of the absolute protection of his rights to which he is entitled under the charitable policy of our criminal laws, and assuming that the voluntary character and the accuracy of the recording device has been established, we make the following *suggestions* as to trial procedure in the event an objection is interposed to the introduction of a recorded statement on the grounds that such statement is inaudible, or contains illegal, irrelevant, incompetent, or immaterial evidence.

"The trial court should first have the recording played or run off before it out of the presence of the jury, counsel being afforded the opportunity at this time of interposing appropriate objections. A transcription of the audible portions of the statement should of course be made at this time.

"If either of such defects infect the recording there can be doubt as to its admissibility." (Emphasis supplied.) 38 Ala.App. at 72–73, 79 So.2d at 73.

In *Wright*, the question raised was the propriety of admitting into evidence, over defendant's objection that it was inaudible, a recorded confession. However, because of other errors in the cause requiring reversal, the court pretermitted consideration of any possible error growing out of admission of the recorded statement and made the above quoted "suggestions" for future guidance of the trial court.

In denying the petition for writ of certiorari in *Wright*, this court expressly reserved judgment of the proposed procedure

for proof of confessory statements by a recording machine. 262 Ala. 420, 79 So.2d 74, 75.

This court has not, prior to this case, directed its consideration to the procedures described in *Wright*. However, the Court of Appeals clearly indicated that strict compliance with them was not required in a case subsequent to *Wright*, Lindsay v. State, 41 Ala.App. 85, 125 So.2d 716, cert. stricken 271 Ala. 549, 125 So.2d 725, cert. denied 366 U.S. 933, 81 S.Ct. 1656, 6 L. Ed.2d 392. In Lindsay v. State, the tape recorded matter was not confessory, as is here the case, but instead related to the res gestae, a difference which we do not deem pertinent to the question now before us. In *Lindsay*, the Court of Appeals stated the following:

"After the State laid a foundation of authenticity and electronic capability, the trial judge took the precaution of having an advance playing of the recordings outside the hearing of the jury. He denied a request that the court reporter transcribe the conversations. This did not comply with the procedure given in Wright v. State, 38 Ala.App. 64, 79 So. 2d 66. However, we see no harm to the defendant because the substance of the recorded conversations had already come in through the testimony viva voce of Messrs. Love and Quinn. Moreover, we consider the jury could certainly have heard enough [though in a few places the recordings were scratchy and unequal in volume] to get from the recordings a fair cross section of their import." 41 Ala.App. at 92–93, 125 So. 2d at 723.

In overruling the application for rehearing, the court was even more explicit:

"Q. '10. Is it error to permit recordings of an alleged statement by the defendant to the jury without having the official court reporter take the audible portion down stenographically?'

"A. Under Wright v. State, supra, it would have been better to have done so: failure to do so, however, is not error." 41 Ala.App. at 94, 125 So.2d at 724.

Consonant with the goal of preserving the rights of the defendant by keeping illegal and incompetent evidence from the jury, this court has laid down the following general rule on the admissibility of tape recordings:

"It seems to be a well settled principle that a magnetic tape recording may be used as evidence when it is of *matters otherwise legal,* and provided the proper safeguards are shown to have been used so as to protect the recording against error or spoliation. * * *" (Emphasis supplied.) Fikes v. State, 263 Ala. 89, 98, 81 So.2d 303, 311, reversed on other grounds 352 U.S. 191, 77 S.Ct. 281, 1 L. Ed.2d 246.

Petitioner has directed our attention to Kissic v. State, 266 Ala. 71, 94 So.2d 202. The case does not aid his cause. In *Kissic,* a judgment of conviction of murder in the second degree was reversed because of the admission of illegal matter through a tape recording. Although this court noted that there had been no attempt to follow the procedure suggested in *Wright,* it did not ground its judgment of reversal in that failure, but, instead, held that "* * * [t]he error was in the playing of the record in the presence of the jury when it contained illegal hearsay evidence and prejudicial statements. * * *" 266 Ala. at 76, 94 So.2d at 207. Thus, contrary to petitioner's contention, the error was in the admission of evidence which was not "otherwise legal," rather than the failure to follow any particular procedures.

Similarly, in Fikes v. State, supra, on certiorari to the United States Supreme Court, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed. 2d 246, it was held that the confession contained in the tape recording was not legal evidence because not voluntary. Reversal was based upon the erroneous admission of

this illegal evidence, not upon failure to follow specific procedures for admitting the recording into evidence.

■ We do not believe that it is only by strict adherence to the *Wright* requirement that a transcription be made that a trial court can make the necessary determination of admissibility. In *Wright*, there was objection to the admission of the tape on the ground that it was in part inaudible, a circumstance which might well make a written transcription of the tape desirable. Such is not the case before us.

If it can be shown that by other procedures defendant was afforded ample opportunity to interpose objections to admission of the tape recording, in whole or in part, we will not predicate reversal solely upon the failure to have a written transcription made. The procedures established in *Wright* are not an end in themselves, but a means of protecting the rights of the defendant.

The Court of Criminal Appeals held that the admission of the tape recording was not, on the facts of this case, error and that all proper predicates had been laid for its admission. We assume that there was evidence, though it was not stated in the opinion, which supported this holding, and we will not go to the record to verify its existence. Clayton v. Ragsdale, supra.

Despite the fact that defendant was not given a written transcription, there is no showing that he was injured by this omission. It is not alleged that defendant did not have every opportunity to interpose any and all objections he desired to the tape, and, for aught that appears, he may have been given a copy of the tape to aid in preparing his objections. Nor does defendant indicate what objections he would have made if he had been given a fuller opportunity to do so. He makes no claim that by failure to have the tape transcribed the trial court allowed illegal or incompetent evidence to go to the jury.

In further support of our conclusion that defendant has suffered no injury on this point, we note the Court of Criminal Appeals' conclusion that the tape recorded confession was cumulative and corroborative of (1) a typed confession signed by defendant and of (2) the testimony of witnesses to his inculpatory statements. Therefore, the substance of the recorded confession was before the jury by other evidence.

■ In light of these facts, we believe that giving defendant a written transcription merely to comply with *Wright* would have been a useless thing, and we will not predicate reversal upon the failure to do so.

IV.

Finally, petitioner alleges that there is error in the holding of the Court of Criminal Appeals that compliance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, does not require officers to warn an accused that he can stop answering at any time and ask for a lawyer. The Court of Criminal Appeals did not err in its interpretation of *Miranda*.

Before discussing its *Miranda* holding in great detail, the United States Supreme Court summarized that holding as follows:

"Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. * * * As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any

statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of *these rights,* provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned." (Emphasis supplied.) 384 U.S. at 444–445, 86 S.Ct. at 1612.

Near the end of the opinion, the Supreme Court again summarized the rights of which an accused must be told:

"To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of

an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. *Opportunity to exercise these rights must be afforded to him throughout the interrogation.* * * *" (Emphasis supplied.) 384 U.S. at 478–479, 86 S.Ct. at 1630.

From these two quoted passages and a reading of the entire *Miranda* opinion, we feel it to be clear that only those rights numbered 1–4 in the preceding quotation must be given to an accused prior to interrogation. The right of an accused to exercise the above enumerated rights at any time during the proceeding is not a separate right of which he must be independently informed. It is, instead, the practical result of his exercising those other rights at a time of his choosing, as the following passage indicates:

"Once warnings have been given, the *subsequent procedure is clear.* If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. * * *" (Emphasis supplied.) 384 U.S. at 473–474, 86 S.Ct. at 1627.

The Court of Criminal Appeals had previously reached this conclusion in Watts v. State, 48 Ala.App.143, 262 So.2d 630.

There is no reversible error in the opinion of the Court of Criminal Appeals.[1]

Affirmed.

MERRILL, COLEMAN, HARWOOD, BLOODWORTH, MADDOX and SOMERVILLE, JJ., concur.

HEFLIN, C. J., not sitting.

1. It is noted that the opinion of the Court of Criminal Appeals in this case was rendered prior to the 29th day of June, 1972, when the Supreme Court of the United States handed down the decision of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (the recent capital punishment case), which is now pending on an application for rehearing.