19642

The STATE, Respondent, v. John Hall CANNON, Appellant

(197 S. E. (2d) 678)

*Messrs. Henry W. Kirkland,* of *Kirkland, Aaron & Alley,* and *Theodore W. Law, Jr.,* Columbia, *for Appellant,*

538

*Messrs. John W. Foard, Jr., Sol.,* and *James L. Felder, Asst. Sol.,* of Columbia, *for Respondent,*

June 20, 1973.

LITTLEJOHN, Justice:

The defendant, John Hall Cannon, was tried by a jury and found guilty of murdering his four-year-old half-brother, Edward Holbrook Wyman, Jr. He has appealed, alleging that the judge committed error in admitting his confession into evidence; in ruling that the State's medical witness was qualified to testify as an expert as to the defendant's sanity; and in charging the M'Naghten rule to the jury as a test for determining legal sanity.

The defendant is eighteen years old and lived with his grandmother at Conway. His father, O'Neil Cannon, also resided at Conway. His mother, who was divorced from the defendant's father, lived about 125 miles from Conway in Columbia and was married to Edward Holbrook Wyman. On Friday morning, November 26, 1971, the maid employed by the Wymans found the dead bodies of the defendant's mother, the defendant's step-father, and the defendant's half-brother. All had died of pistol-shot wounds. Young Edward was found dead in the lap of his deceased father in a chair in the den; the body of defendant's mother was found on the floor in the bathroom; apparently they died Wednesday night. The matter was reported to police authorities and an intense investigation was begun.

We treat first the first question raised by the appellant, which, as copied from his brief, reads as follows:

"Did the court err in admitting into evidence defendant's confession since the confession had been obtained by subterfuge and the use of unlawful pressure in violation of his

rights under the Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States?"

A summary of the circumstances surrounding the defendant's arrest and subsequent interrogation is necessary to a disposition of this question. He was arrested shortly after attending the funeral of his mother on the 29th day of November. The arrest was made on a highway leading from the funeral area by two officers of the Richland County Sheriff's Department. They took him to the headquarters of the South Carolina Law Enforcement Division (SLED), arriving at about 5:45 in the afternoon. He was interrogated for a short period of time by police officers, Lt. Wyndham, Lt. Faulk, Capt. LaVerne, Capt. Gasque, and Sheriff Powell. The record fairly indicates that the questioning was conducted in a temperate manner. The defendant was then taken into the office of Lt. Faulk for about twenty minutes. The record is not complete, but the defendant was examined by the use of a polygraph machine. The defendant continued to deny his guilt during these sessions. After about twenty minutes, Lt. Faulk left the office and Lt. Wyndham and Capt. Gasque entered to continue questioning the defendant. It was during this twenty minute session that the defendant first gave a statement indicating that he had committed the fatal shooting. Subsequently, Sheriff Powell and Capt. LaVerne talked to the defendant for about fifteen to twenty minutes and he again made statements amounting to a confession.

Thereafter, the defendant was taken to an outer office where his statement was reduced to writing and subsequently typed by a secretary. As the defendant once more repeated his confession for transcribing, there were four police officers present. The process of receiving his statement, typing and signing it, took approximately an hour and a half. Total time spent at SLED Headquarters was approximately five and one-half hours, ending about 10:15 in the evening. The signed statement included the following:

"I have been advised that I have the right to remain silent and anything I say can and will be used against me in a Court of Law. I have been advised that I have the right to talk to a lawyer and have him present when I am being questioned. I have been advised that if I cannot afford a lawyer that the State will appoint one to represent me without cost. I have been advised that any time during the questioning if there is any particular question I do not want to answer that I do not have to do so. I have been advised that I can terminate the questioning at any time by saying that I do not wish to answer any more questions. I understand these rights and I waive these rights and I make the following statement."

The confession was somewhat detailed and need not be repeated verbatim. In it, he stated that he had bought a pistol in Conway and had practiced target shooting with it. He drove to Columbia on Wednesday, November 24, 1971, and went to the home of the now-deceased trio. He admitted shooting his four-year-old half-brother (as well as his mother and step-father) and then drove to Conway. The next morning, he carried the .22 pistol, which he had used to do the shooting, and threw it into a sewage lagoon behind the Conway Mall on Highway U. S. 501. Later, officers recovered the pistol from the lagoon and it was identified as being one purchased by the defendant in Conway.

The defendant does not question the timeliness of a *Miranda* warning, but does challenge the sufficiency of such and the adequacy of the waiver of rights as described in *Miranda*. The evidence indicates that the following warning was in essence given to the defendant at the time of arrest and at least three other times throughout the interrogation by different officers:

"You have the right to remain silent; anything you say can and will be used against you in a court of law; you have the right to talk to a lawyer and have him present with you while you are being questioned; if you cannot

afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish one."

Defendant contends that the initial warnings were insufficient and incomplete; he argues they should have included, as did the warning included in the typed statement, in effect the following:

"If you decide to answer any questions now without a lawyer present, you will still have the right to stop answering at any time or until you talk to a lawyer."

We do not agree that *Miranda v. Arizona*, 384 U. S. 486, 86 S. Ct. 1602, 16 L. Ed. (2d) 694 (1966), required the inclusion of the above when informing a person of his rights. We cite three cases holding such: *State v. Jones*, 293 Minn. 443, 196 N. W. (2d) 606 (1972); *Flannagin v. State*, 289 Ala. 177, 266 So. (2d) 643 (1972); *Watts v. State*, 48 Ala. App. 143, 262 So. (2d) 630 (1972), and specifically point with approval to the reasoning of the *Flannagin* case. See also 3 Wigmore, Evidence, § 826 (Chadbourn Rev. 1970).

The defendant also submits that even if the warnings be deemed sufficient, he did not freely, voluntarily and knowingly waive his rights. The trial judge held an out-of-the-presence-of-the-jury hearing in which the State and the defendant were permitted to meet this issue. Among those testifying was the defendant himself. He admitted that the statement was basically correct. After hearing the testimony, the trial judge said, prior to admitting the confession into evidence:

"We are convinced beyond a reasonable doubt and we so find that the confession or statement obtained from the defendant was freely and voluntarily given and that the same was given without duress, without coercion, without undue influence. We further find that the defendant was advised of his Constitutional rights, the right to have an attorney present with him during the interview, the interrogation,

that the Court would appoint an attorney for him if he was without funds with which to employ one without cost to him, that he had the right to remain silent, he had the right to terminate the interrogation at any time and not to answer any questions. We further find that the defendant knowingly and intelligently waived such rights under the 5th and 6th amendments to remain silent and have counsel present with him at the interview and interrogation."

Notwithstanding the *Miranda* court's effort to particularize and to prescribe specifics for valid waivers, in resolving issues of waiver *vel non,* courts must make inquiries concerning the totality of circumstances. It is clear that the totality of the circumstances surrounding the admission of the confession was explored by the trial judge. Both the State and the defendant were permitted to introduce evidence out of the presence of the jury to their own satisfaction. Every case must be decided on its own merits, based on the totality of the circumstances.

The record fairly indicates that not only the initial questioning, but all of the interrogation was conducted in a relaxed and conversational manner. The fact that the defendant was eighteen years of age and had an eleventh grade education is certainly a consideration, but the record reveals that the police used a very temperate manner in questioning him. It is fair to say the record reveals the police made a conscious effort to refrain from taking undue advantage. The defendant argues that he was intentionally separated from his father and that this tended to show excessive coercion. The record is simply void of any implication that the defendant desired the presence of his father and there is at least some evidence that the defendant's father had no wish to see his son.

The number of officers and the intensity of the interrogation is questioned. This is indeed a factor, but as previously discussed, the conduct of the officers was exemplified by restraint and courtesy. The fact that a polygraph exami-

nation was used is another valid consideration in the totality of circumstances. The record is very sparse as to the circumstances surrounding the use of the polygraph.

The defendant also vigorously argues that *Blackburn v. Alabama,* 361 U. S. 199, 80 S. Ct. 274, 4 L. Ed. (2d) 242 (1960), even without the other considerations, controls and demands a finding that the confession was inadmissible. We do not think *Blackburn* controls.[1]

The difficulty of the task of weighing these factors is illustrated by this case. The State has shown that five experienced police officers interrogated a willing defendant, singularly or in groups of two, for some two hours before his first confession and it was further shown that such interrogation was not aggressive, leading and comprehensive in nature, or intense and coercive in atmosphere. The record shows the officers to be keenly aware of the defendant's rights, and shows a conscious and continued effort by the officers to insure that the defendant was equally aware of those rights. The record fairly indicates that throughout interrogation the defendant was repeatedly warned, and after each warning again showed a willingness to answer questions. Most important, he was asked if he wanted to talk with the questioning officers. He answered that he did. The use of the polygraph would not in itself show involuntariness. *United States v. McDevitt,* 328 F. (2d) 282 (6th Cir. 1964); *Thompson v. Cox,* 352 F. (2d) 488 (10th Cir. 1965). The record indicates that the result of the polygraph test was a continued denial by defendant of any connection with the murder. What influence the polygraph had on the defendant's decision to confess is at best speculation. In this case, we find nothing in the use of the polygraph that was so coercive as to have overborne the defendant's will to resist.

---

[1] In *Blackburn,* the medical testimony was so compelling that it established the strongest probability that the defendant was mentally ill and thus conclusively demonstrated the involuntariness of the confession. In this case, a finding that the defendant was insane or mentally ill is by no means compelled.

We cannot say that the trial judge erred in admitting the confession into evidence for the jury's consideration.

After ruling that the confession was free and voluntary, the trial judge charged the jury that it could still disregard the same unless it, the jury, was convinced "beyond a reasonable doubt that such confession was freely and voluntarily made, without any threats or inducements addressed either to hope or to fear. It is your duty to determine from all the evidence before you whether the State has established beyond a reasonable doubt that any such confession was in fact freely and voluntarily made." Obviously, the jury, as well as the judge, concluded that the procurement of the confession was not improper.

■ The second question raised by the defendant, as quoted from his brief, is as follows:

"Did the court err by permitting the state's witness, Dr. Roland Beiren to continue his testimony as an expert witness since the court should have taken judicial notice of the statement of the witness that adolescent psychiatry is a highly specialized field and he admitted his lack of qualifications. Did the court also err in refusing defense motion for a verdict *non obstante veredicto,* based largely on this witness's admissions?"

The defendant argues that the testimony of the State's psychiatrist, Dr. Roland Bieren, was incompetent and should have been excluded because he did not qualify. as an expert. The record reflects that this witness is a graduate of the Medical School at the University of Maryland in 1936. He spent seven years post-graduate work at the University of Maryland Medical School and Hospital, and three years as a Navy doctor during World War II. Thereafter, he practiced obstetrics and gynecology. In 1967, he came to Columbia and took three years of training in psychiatry at the William S. Hall Psychiatric Institute, graduating in 1970. Since that time, he has been employed at the State Hospital for the Mentally Ill, as a psychiatrist. He was appointed as

Chief Psychiatrist of the Court Psychiatry Services in 1971. He is a member of the American Psychiatric Association.

The testimony of this witness was used in reply after the defendant had psychiatrists testify as to defendant's mentality. It is argued that Dr. Bieren's testimony should have been excluded because he is not a specialist in adolescent psychiatry. The qualification of an expert witness is left largely to the discretion of the trial judge. The law does not require the best possible kind of witness, but only persons of such qualifications as the community reasonably relies upon in seeking medical advice. 2 Wigmore, Evidence, § 569 (3rd ed. 1940). Certainly, there was no abuse of discretion as relates to the admissibility of this witness' testimony and we find the exception without merit.

The last question raised by the defendant on this appeal, as taken from his brief, is as follows:

"Did the court err in refusing defendant's request for a charge to the jury on the federal rule as to insanity as a defense to a criminal charge and by insisting on the M'Naghten Rule as a guide in the case denying the defendant his rights to equal protection of the law and due process under the Fourth and Fourteenth Amendments to the Constitution of the United States?"

By this exception, the defendant asks this Court to abandon the M'Naghten test as a means of establishing legal sanity. South Carolina has long used the rule. *State v. Allen,* 231 S. C. 391, 98 S. E. (2d) 826 (1957); *State v. Byrd,* 229 S. C. 593, 93 S. E. (2d) 900 (1956). It would serve no useful purpose in this opinion to rehash the merits and demerits of the M'Naghten rule. We are aware of the alternatives which some courts have adopted, but are not convinced that the other rules set forth a better formula for determining whether a person accused of crime should be excused because of his mental condition. It should be comforting to those who would attack the M'Naghten rule to realize that a layman jury, regardless

of the rule recited, normally takes a common sense approach and determines whether the accused person is, first, guilty or not guilty, and if guilty, whether his mental condition is such that he ought to be excused of the crime because of his mental condition. We adhere to the M'Naghten rule.

Having found that all exceptions are without merit, the judgment of the lower court is

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.