TYSON, Judge.
The indictment by the Grand Jury of Dallas County, Alabama, charged the appellant with the robbery of one Lou Golson. The jury’s verdict found appellant “guilty as charged” and fixed punishment at fifteen years imprisonment in the penitentiary. The trial court then entered judgment in accordance with this verdict.
At 11:00 p. m., October 5, 1974, two black males robbed the Thrif-T-Sak on Jeff Davis Avenue in Selma of $133.94.
One of these men, Sammy Robertson, called as the State’s first witness at trial, testified that both he and the appellant were “sitting around” at LeGrand Rivers’ house on the night of October 5, when Rivers suggested they could get “some good money” at the Thrif-T-Sak on Jeff Davis. Robertson testified that after finding a sheet of paper and writing a note to the effect that he had a gun, meant business, and wanted all the money, he and the appellant got in Rivers’ car, drove to the rear of Leet’s Junk Yard and parked. Robertson explained that they then proceeded on foot to the Thrif-T-Sak, handed the cashier the note, and fled back to LeGrand Rivers’ house with the money.
Lieutenant George Jones of the ABI and Detective Mike Capps of the Selma Police Department both testified that they took part in a search of the residence of LeGrand Rivers’ located at 1427 Washington Street in Selma, that in a room rented by Sammy Robertson, they discovered a notebook and various articles of clothing including a “yellow outfit” (State’s Exhibits E & F) and a black leather jacket (State’s Exhibit A).
Detective Douglas Little of the Selma Police Department stated that, while investigating the robbery, he found a crumpled note (State’s Exhibit H) behind Leet’s Junk Yard which read, “I have a gun in my hand. Put all the money in my hand. I do not play. I mean business. Put the money in a paper bag! I mean business.”
Thrif-T-Sak’s cashier, Lou Golson, testified that at 11:00 p. m., on October 5, 1974, two black males approached the front counter, that the shorter of them who was wearing a black leather jacket she identified as State’s Exhibit A, handed her a note which she identified as State’s Exhibit H. Mrs. Golson testified that the taller of the two men whom she positively identified as the appellant, was wearing a “yellow outfit” which she identified as State’s Exhibits E and F. She stated that the appellant, who appeared to be in charge, told her to “put the money in a bag.” “Terrified,” Mrs. Golson did as she was told. After she handed appellant the money, he said, “One of you is going with us,” and reached behind the counter and grabbed Ruby Teal, another employee, and dragged her to the front door where she broke away and ran back behind the counter. Mrs. Golson testified that at this point appellant asked the shorter man, whose right hand had remained beneath his jacket since he entered the store, for the gun, but that he was already outside and simply replied, “Come on, let’s go,” and the appellant followed. Finally, Mrs. Golson stated that she identified both Robertson and the appellant at police headquarters less than two hours after the robbery, but that by this time both men had changed clothes.
*404 Two other employees who were in the Thrif-T-Sak at the time of the robbery, Ruby Teal and Kenneth Nichols, both corroborated Lou Golson’s testimony in every detail with the exception of Mrs. Teal’s inability to positively identify the appellant.
The appellant, Sammy Lee Gould, testified that the first time he saw Robertson on October 5, 1974, was around midnight at LeGrand Rivers’ house where Robertson boarded, that Rivers and Marty Williams were there also. Appellant stated that after he left Rivers’ house, he was arrested on a DWI charge and that Sammy Robertson was with him at the time. Appellant explained that he often went by the ThrifT-Sak to buy beer but that he did not go there on the night of the robbery. He also identified State’s Exhibits E and F as the yellow clothing that Marty Williams had been wearing on the night of October S, 1974, and pointed out that he, appellant, had been wearing something else at the time of his arrest.
I
During the trial court’s qualification of the jury, Mrs. Velberta Chestnut acknowledged that she was related to defense counsel. Hearing this, the judge asked, “What is your relationship, if you want to admit it, to Mr. Chestnut?”
Suffice it to say that we are not in accord with appellant’s contention that this remark evidenced the trial court’s contempt for defense counsel, thereby bringing him into ridicule. Rather, we agree with the State that the likely explanation would be “the traditional reluctance of some elderly ladies to disclose their ages, or the fact that they are old enough to be grandmothers or great-aunts of men old enough to practice law.”
In support of this interpretation of the trial court’s query of Mrs. Chestnut, we note the absence of any objection by defense counsel, in effect, a silent admission that the trial court’s remark did not in fact carry the connotation now suggested by appellant. No error is shown.
II
After asking Sammy Robertson only a few questions, it became apparent to the District Attorney that Robertson had changed his story; that contrary to his pretrial statements he was now attempting to exonerate the appellant.* Faced with this turn of events, the District Attorney, Mr. Morrow, made the following statements:
“MR. MORROW: I think I have the right to refresh his recollection and have him deny it, then I have the right to impeach, because obviously he’s turned into a hostile witness and there’s some collusion somewhere because two minutes ago I talked to him.
“MR. CHESTNUT: We object to that unwarranted assumption by some collusion somewhere. The only person that’s had contact with him was you.
“MR. MORROW: He went to jail to eat, I don’t know.
“THE COURT: I think you can take him as a surprise witness.”
Appellant made neither a motion to exclude nor motion for a new trial. Furthermore, as may be seen, his objection to the District Attorney’s statement that “there’s some collusion somewhere,” was never ruled on by the trial court. We are therefore of the opinion that error to reverse is not here shown.
While this opinion should not be understood as necessarily an approval of the District Attorney’s remark here in question, West v. State, 54 Ala.App. 647, 312 So.2d 45, cert. den. 294 Ala. 775, 312 So.2d 52, *405 Robertson did in fact while on the witness stand perjure himself in front of the jury. Viewed in this posture, we are of the opinion that reversible error is not shown.
Ill
Appellant next argues that the State failed to corroborate the testimony of Sammy Robertson wherein he identified the appellant as his accomplice. More specifically, appellant asserts that although two eyewitnesses, Lou Golson and Kenneth Nichols, also identified appellant, that their identifications were tainted and inadmissible and that this cause is therefore due to be reversed in view of the well-established rule which forbids a conviction based solely on the uncorroborated testimony of an accomplice.
Initially, we point out that appellant neither objected to, nor moved to exclude Golson’s and Nichols’ testimony identifying him as one of the two robbers.
Further, both Mrs. Golson and Kenneth Nichols made it abundantly clear that their identifications had an independent origin; that they were based solely on their observations of appellant on the night of the robbery. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411.
Finally, even upon the merits, the constitutional issues raised by appellant are inapplicable to the facts of the instant case. For instance, Mrs. Golson identified appellant at police headquarters less than two hours after the robbery. Appellant’s lack of counsel at this embryonic stage of the proceedings did not violate his constitutional rights. See Kirby v. Illinois, supra; Cannon v. State, 53 Ala.App. 509, 301 So.2d 272; Haggler v. State, 49 Ala.App. 259, 270 So.2d 690.
For the reasons mentioned above, error is not shown.
IV
The same witnesses whose identifications of appellant we upheld in Part III of this opinion, also identified State’s Exhibits E and F as the clothing worn by appellant on the night of the robbery, after which the trial court admitted same into evidence.
Clothing of an accused which tends to corroborate or disprove, illustrate or elucidate, any other evidence, or to identify any of the parties, or connect the accused with the crime is clearly admissible. Flannagin v. State, 289 Ala. 177, 266 So.2d 643; Barbour v. State, 262 Ala. 297, 78 So.2d 328; Harnage v. State, 49 Ala.App. 563, 274 So.2d 333, Reversed on other grounds, 290 Ala. 142, 274 So.2d 352. State’s Exhibits E and F were therefore properly admitted into evidence.
We have carefully examined the record and find same to be free from error. This cause is therefore due to be and the same is hereby
AFFIRMED.
HARRIS, DeCARLO and BOOKOUT, JJ., and SIMMONS, Supernumerary Circuit Judge, concur.

 In- his subsequent testimony however, Robertson did- recant and identify appellant as Ms accomplice iu the robbery. See the synopsis of Robertson’s trial testimony, supra.