In accordance with the verdict of a jury and the only punishment prescribed by law, the trial court sentenced appellant to imprisonment for life for murder in the first degree of his ex-wife Vickie Dianne Mitchell.
The only issue expressly raised on appeal is as to the action of the trial court in overruling defendant's objection to the introduction in evidence of a bloodstained shirt worn by deceased at the time she was killed by one of two or more bullets that struck her body from a pistol in the hand or hands of defendant. The following portion of the record includes all of the objections and rulings of the court on the subject:
 "MR. STARNES: Judge, we'd like to offer State's Exhibit No. 17 [the shirt or jersey involved].
 "MR. WILKES: Objection. The chain of possession has not been shown on the clothing, that particular item or any other item of clothing.
"THE COURT: Overruled as to that.
"MR. WILKES: We except.
"MR. STARNES: That's all.
 "MR. WILKES: Not shown it is in the same . . . substantially the same condition it was in, anyway. We interpose another objection on that ground.
"THE COURT: Overruled the objection.
"MR. WILKES: We except."
Appellant now states that the admission in evidence of the shirt was reversible error by reason of its "prejudicial irrelevancy that would inflame the minds of the jury." It is readily observable that the position of appellant as to the evidence was not included in either ground of defendant's objection to the evidence on the trial. A trial judge should not be put in error for overruling an objection to evidence on a ground stated on appeal that was not assigned to the objection made on the trial. Andrews v. State, Ala.Cr.App.,359 So.2d 1172 (1978); Stemple *Page 681 v. State, Ala.Cr.App., 352 So.2d 33 (1977); Oatsvall v. State,57 Ala. App. 240, 327 So.2d 735 (1975); Rogers v. State,53 Ala. App. 573, 302 So.2d 547 (1974).
In addition, we conclude that appellant is not correct in his present contention that the particular item of evidence was subject to the objection now made to it. Appellant relies uponBoyette v. State, 215 Ala. 472, 110 So. 812 (1926), and other eases, in which it was held that the clothing of a deceased in a homicide case should not have been admitted in evidence. In such cases, the clothing was not pierced by the instrument or agency of death, and it was held therein that it did not "tend to corroborate or disprove, illustrate or elucidate any other evidence." In the instant case, wounds on the body were underneath the shirt at or about holes that had been made in the shirt. In Flannagin v. State, 48 Ala. App. 559,266 So.2d 637 (1971), aff'd 289 Ala. 177, 266 So.2d 643 (1972), both courts on appeal expressly distinguished the case of Boyette v.State, supra, and like cases, from cases in which the clothing had been penetrated, as it was here, by a death-dealing bullet.
The undisputed evidence shows that defendant went to the home of his ex-wife and Tommy Mitchell, with whom she was then living as his wife, about 7:00 P.M., December 12, 1978, and that while there the victim was killed by a .38 pistol in the hand or hands of defendant. The only persons at the house when defendant arrived were the victim, Tommy Mitchell, the defendant and defendant's and the victim's son, four years of age. Tommy Mitchell testified that he left the house promptly upon observing that defendant did not come peacefully. His testimony shed little light, if any, as to what occurred soon after defendant arrived at the house. The trial court ruled, after a hearing out of the presence of the jury, that the four-year-old boy could not qualify as a witness. This left defendant as the only witness to testify as to precisely what occurred. He said that he went to his ex-wife's home, knocked on the door, that she threw the door wide open and said, "It's Larry. Get a gun and shoot him." He said he saw Tommy Mitchell in the house, that Tommy ran into a bedroom and that he then chased Tommy, but never found him. He testified that he did not have a gun on his person at that time, but that he went outside to his automobile and "got my gun." He then returned to the house and then proceeded to take his little boy to his automobile; that his ex-wife was between them and the house while he and his little boy were going to the automobile. According to his further testimony, he opened the door and let his little boy in the automobile. His testimony continued as follows:
"Q. Then what happened?
 "A. I got in the car and laid my gun on the seat, and when I reached up to crank the car Vickie pushed the door to and started running and hollering for Tommy to shoot me.
"Q. What was she saying when she was running?
"A. Shoot him.
"Q. Did she say it only once?
"A. No, sir, she kept repeating it.
"Q. Was she hollering this loudly?
"A. Yes, sir, she was screaming it.
 "Q. In what direction was she going when she was hollering shoot him, shoot him, shoot him?
"A. She was going towards the house.
"Q. What, if anything, did you do?
 "A. I pushed the door open and fell out of the car and pointed the gun at the only dark spot at the house, at the window, and I pulled the trigger.
". . .
"Q. When you fired what were you firing at?
"A. The window, the dark spot.
"Q. Then what happened?
"A. Vickie stopped hollering and she just fell.
". . . .
"Q. Did you still have the gun in your hand?
"A. Yes, sir.
 "Q. After you . . . immediately after you fired that shot at the window what did you do with the gun? *Page 682 
"A. I still had it. I just cocked the hammer again.
 "Q. You cocked the hammer again. When you went over to her after she fell did you kneel down to her?
"A. Yes, sir, I squatted down.
 "Q. And told her what you have told us you told her [that he was sorry and that he loved her]?
"A. Yes, sir.
"Q. Did you rise or commence to rise, get up?
"A. Yes, sir.
 "Q. What, if anything, happened when you started to get up?
"A. The gun went off again.
"Q. What then did you do?
"A. I got in the car with my little boy and left."
The defendant then testified that he then fled to Texas where he was afterwards arrested and returned to Alabama.
The evidence is sufficient to support the verdict. There is no contention to the contrary.
We have searched the record for error prejudicial to defendant and have found none. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur. *Page 1057