The appellant, Billy M. Bolding, was indicted on May 4, 1982, by the Etowah County Grand Jury on charges of trafficking in cannabis in violation of § 20-2-80 Code of Alabama (1975), and possession of marijuana in violation of § 20-2-70 (a) Code of *Page 188 
Alabama (1975). The latter charge was dismissed on motion by the State, thus leaving the indictment to charge that appellant "did knowingly sell, manufacture, deliver or bring into this state, or was knowingly in actual or constructive possession of in excess of one kilo or 2.2 pounds of cannabis. . . ." Appellant was arraigned on May 17, 1982, when he entered a plea of not guilty. The trial commenced on June 8, 1982, and on June 10, 1982, the jury found appellant "guilty of trafficking in cannabis as charged in the indictment." Appellant was assessed a fine of $25,000 and sentenced to ten years in the penitentiary. This appeal followed.
Officer Johnny Grant, a member of the Etowah County Sheriff's Department's Narcotics Division, testified that on April 2, 1982, between 11:00 and 11:30 a.m., he was keeping a residence under surveillance at 308 Clark Street in Gadsden when a 1975 Buick driven by appellant stopped on the street in front of the residence. He testified that a passenger in the car with appellant, identified at trial as Harvey Holloday, got out and went inside or behind the residence under surveillance. After approximately five minutes, Mr. Holloday reappeared with two other men who were later identified as Curtis Davidson and James Carter. Mr. Holloday got back in the car with appellant while the other two men got in a 1971 Plymouth.
Officer Grant stated that both cars left and that James Buttram, an agent of the Alcoholic Beverage Control Board, and he followed these two cars to 404 Noojin Court in East Gadsden, Alabama. Upon arrival, the two officers went up to some railroad tracks in the woods behind the residence, where they kept the two automobiles under surveillance. While viewing the scene with binoculars, Officer Grant observed two men come out of the Noojin Court residence and talk to Mr. Davidson and Mr. Carter who were then standing beside their 1971 Plymouth. The two men who came from the Noojin Court residence were later discovered to be Mike Crowder and David Summerville. While these four men were talking, appellant remained in his car with Mr. Holloday.
After the four men talked several minutes, Mr. Carter proceeded to open the trunk of the 1971 Plymouth automobile while Mr. Davidson walked over to appellant, who was still sitting in the 1975 Buick. After saying something to appellant, Mr. Davidson walked to the rear of the appellant's car where he unlocked the car trunk. At that time, Carter and Davidson each removed a large bag from the trunk of appellant's car and put them in the trunk of the Plymouth. Appellant and Mr. Holloday then got out of their car and went into the Noojin Court residence with Mr. Carter and Mr. Davidson. Mike Crowder and David Summerville left in a station wagon that had been parked at the residence.
After observing these events, Officer Grant testified, he left his place of observation and went to the Etowah County Courthouse to obtain a search warrant. Agent Buttram remained behind and continued observing with binoculars the house and two cars that the officers had followed. Agent Buttram testified that during the hour that Officer Grant was gone, no one removed or put anything in the trunk of the Plymouth, and no one left the house.
When Officer Grant returned with a search warrant, the two officers waited for a uniform car to assist them in the search and to back them up. Officer Grant stated that, as they were waiting, the station wagon containing Mr. Crowder and Mr. Summerville returned. After the two men went to the residence, appellant and Mr. Holloday exited the house and drove away in appellant's Buick. Officer Grant then radioed the uniform car that was coming to assist in the search to stop the Buick. Appellant and Mr. Holloday were subsequently stopped, placed under arrest, and taken to jail.
After radioing the sheriff's patrol car, Officer Grant testified that Agent Buttram and he proceeded to search the 1971 Plymouth that was parked at 404 Noojin Court. Two large bags normally used for hog feed were found in the trunk. Each of these *Page 189 
two bags contained ten plastic bags, each holding approximately one pound of marijuana and all totaling twenty pounds.
Officer Grant testified that, at approximately 5:00 p.m. that same day, he had occasion to talk with appellant at the Etowah County Courthouse. At that time, appellant was advised of hisMiranda rights. A waiver of those rights was explained and read to appellant and a waiver form was signed by appellant at 5:20 p.m. After appellant's advisement and waiver of rights, Officer Grant asked appellant if he wanted to write out a statement. Officer Grant stated that appellant said, since he could not write very well, that he wanted Officer Grant to write out the statement. Consequently, Officer Grant transcribed what appellant said, the written statement was read to appellant, appellant also read it and then appellant signed it. Etowah County Sheriff's Investigator Bobby Norman and Officer Grant testified that this statement was not induced by threat, promise, coercion or hope of reward. At trial, this written statement was received into evidence.
Appellant's statement explained that, on the day in question, Mr. Holloday asked appellant to drive him to Gadsden and also asked appellant if he cared if he took some bags of marijuana. Appellant agreed to both, whereby he took Mr. Holloday to some woods near Mr. Holloday's house where Holloday got the marijuana and put it in the trunk of appellant's car. Appellant also stated that Mr. Holloday and he went to Gadsden, that they stopped at a house where Mr. Davidson and Mr. Carter joined them in another car, and that Mr. Holloday then told appellant to follow the men who had gotten in the other car. When they arrived at another house, appellant gave his car keys to Mr. Davidson, who unlocked the trunk of his car. Mr. Davidson got the bags out of appellant's car and put them in the 1971 Plymouth that appellant had been following.
Several hours after appellant gave this statement to the officers, he was again advised of his Miranda rights, which he subsequently waived, and he again gave a statement. Officer Grant testified that this statement was also not induced by threat, promise, coercion, or hope of reward. This signed statement, which was also introduced into evidence, differed from his first statement made earlier that day in one significant aspect. In the second statement, appellant stated that the bags containing the marijuana were originally retrieved from a car at appellant's house where Mr. Holloday had placed them the night before rather than from some woods near Mr. Holloday's house as had been related in the first statement.
At trial, appellant testified in his own behalf and denied knowing that marijuana was in his car on the day in question and further denied ever having any interest in any marijuana. He also stated that he did not really know what the contents of the statements that he gave the officers were since he could not read.
Appellant specifically alleges that the search of the 1971 Plymouth which revealed hog feed bags containing marijuana was illegal in that the State failed to meet the Fourth Amendment warrant requirements as enunciated in Aguilar v. Texas,378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). This question need not be decided since it is clear that the defendant lacked standing to contest the validity of the search and seizure. This is so because, based on all the facts and circumstances, the appellant did not have any legitimate expectation of privacy from governmental invasion in the areas searched.United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547,65 L.Ed.2d 619 (1980); Rawlings v. Kentucky, 448 U.S. 98,100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); Rakas v. Illinois,439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); Collier v. State,413 So.2d 396 (Ala.Cr.App. 1981).
In Collier v. State, supra, this Court stated:
 "Persons charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been *Page 190 
violated. Salvucci, supra; Rakas, supra. The burden rests on the defendant to prove not only that a search was illegal, but also that he had a legitimate expectation of privacy in the area searched. Rawlings, supra. `"(A) prosecutor may, with legal consistency and legitimacy, assert that a defendant charged with possession of a seized item did not have a privacy interest violated in the course of the search and seizure.'" Salvucci, 100 S.Ct. at 2551."
The automatic standing rule of Jones v. United States,362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), was specifically overruled in Salvucci, 100 S.Ct. at 2554. In Salvucci it was held:
 "The person in legal possession of a good seized during an illegal search has not necessarily been subject to a Fourth Amendment deprivation. As we hold today in Rawlings v. Kentucky, [448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633], legal possession of a seized good is not a proxy for determining whether the owner had a Fourth Amendment interest for it does not invariably represent the protected Fourth Amendment interest."
* * * * * *
 "While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, see Rakas, supra, 439 U.S., at 144, n. 12 [99 S.Ct., at 431], property rights are neither the beginning nor the end of this Court's inquiry. In Rakas, this Court held that an illegal search only violates the rights of those who have a `legitimate expectation of privacy in the invaded place.' Rakas, [439 U.S.], at 140 [99 S.Ct., at 430]. See also Mancusi v. DeForte, supra [392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154]."
* * * * * *
 "As in Rakas, we find that the Jones standard (legitimately on the premises) `creates too broad a gauge for measurement of Fourth Amendment rights' and that we must instead gauge in a `conscientious effort to apply the Fourth Amendment' by asking not merely whether the defendant had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched.'" 100 S.Ct. at 2552-3.
Under Salvucci, the test of standing is whether the defendant had a legitimate expectation of privacy from governmental invasion. In the case at bar, appellant asserted neither a property right nor a possessory interest in the automobile searched nor an interest in the marijuana seized. The only evidence of his connection with the marijuana is that he transported it before it was seized. Under these facts, appellant has not met his burden of proof that he had a legitimate expectation of privacy in the 1971 Plymouth that was searched. Hence, there was no violation of appellant's Fourth Amendment rights. Davis v. State, 416 So.2d 444 (Ala.Cr.App. 1982), cert. denied 416 So.2d 449 (Ala. 1982).
Appellant further alleges that the trial court erroneously admitted his two written confessions into evidence because the contents of the written statements were not substantially the same as the verbal statements that were related by him nor were they affirmed by him. When the State offered the first written statement of appellant into evidence, defense counsel objected by stating:
 "We object . . . on the theory it's an unsworn document and that by no matter should it be received into evidence. It's hearsay and it's an unexplained document. I mean, it's an unsworn document. I'm sorry. And the document itself should not be received into evidence and we object to it."
This objection was overruled by the trial court and the exhibit was admitted. Upon the offer of the second written statement by the State, defense counsel declared, "[W]e would make the same objections that we did to Exhibit 25, Judge. Improper predicate has been laid and the document itself should not be introduced into evidence." Again, the trial judge overruled defense counsel's objection, and the second statement was admitted. *Page 191 
Only those grounds of objection presented to the trial court can serve as a basis for reversal of its action. Bland v.State, 395 So.2d 164 (Ala.Cr.App. 1981). The trial judge will not be placed in error on grounds not assigned in the objection. Knight v. State, 381 So.2d 680 (Ala.Cr.App. 1980). Even though evidence may have been inadmissible on different grounds, the defendant is bound by the specified grounds of objection. Turley v. State, 356 So.2d 1238 (Ala.Cr.App. 1978). Appellant claims that the written statements as transcribed by Officer Grant are not the same statements that he verbally related. Since appellant raises this issue for the first time on appeal, there is nothing for this Court to review.
As his final contention for reversing his conviction appellant argues that the jury was erroneously allowed to consider testimony concerning the discovery of what appeared to be marijuana on appellant's property several hours after his arrest. The indictment against appellant charges that he did ". . . knowingly sell, manufacture, deliver, or bring into this state, or was knowingly in actual or constructive possession of in excess of one kilo or 2.2 pounds of cannabis. . . ." The burden of proof was on the State to prove that appellant had knowledge that he possessed marijuana. Appellant testified that he had no knowledge of marijuana being in his car on the day in question, and he further denied ever having any interest in any marijuana. The evidence complained of was proper for the jury to consider in deciding whether or not appellant had knowledge that the bags found in the trunk of the 1971 Plymouth automobile contained marijuana.
In Scaloni v. State, 383 So.2d 586 (Ala.Cr.App. 1980), this Court held:
 "The rule of law that on a trial of the person for the alleged commission of a particular crime, evidence of doing other acts, which itself is a crime, is not admissible, does not work to exclude evidence of proof of all prior acts or crimes, only such as are offered for the purpose of showing defendant's bad character. If the defendant's commission of other acts, crimes, or misdeeds proves an element of guilt, or tends to prove guilt otherwise than as tending to prove guilt by way of bad character, then proof of such other act, crime, or misdeed, is admissible. Evidence of the accused's commission of other acts, crimes, or misdeeds, is admissible if his knowledge of certain facts tends to prove an element of the now-charged crime and his commission of such other crime was reasonably calculated to bring to him such knowledge.
 "We hold that the rule which excludes evidence of other criminal acts on the trial of a particular issue is, it is true, not without limitations or exceptions. When it becomes necessary to prove a guilty knowledge on the part of the defendant, evidence of other acts committed by him, though not charged in the indictment against him, are admissible to show guilty knowledge."
The trial court did not err to the prejudice of appellant when it overruled his motion for a mistrial.
We have carefully searched the record for errors injuriously affecting the substantial rights of the appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.